IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| **SUZANNE H. WOOTEN** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO. _____** |
| | § | |
| **JOHN ROACH, SR., CHRISTOPHER MILNER**§ | | |
| **COLLIN COUNTY, TEXAS, GREGORY** | § | |
| **ABBOTT, AND HARRY EUGENE WHITE** | § | |
| | § | |
| **Defendants.** | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

COMES NOW, Suzanne H. Wooten, (hereinafter referred to as "Judge Wooten" or "Plaintiff"), who brings this action pursuant to 42 U.S.C. § 1983, and 28 U.S.C. §§ 1331, 1343, and the Fourth and Fourteenth Amendments to the United States Constitution, to vindicate her right to be free from wrongful arrest and prosecution, and files this, her Original Complaint, complaining of and about John Roach, Sr., Christopher Milner, Collin County, Texas, Gregory Abbott, and Harry White (hereinafter collectively referred to as "Defendants"), and for cause of action would show the Court as follows:

### INTRODUCTION

1.      Plaintiff, Suzanne H. Wooten, was wrongfully arrested, charged, and convicted of multiple contrived counts of Bribery, Conspiracy to Commit Engaging in Organized Criminal Activity, Money Laundering, and Tampering with a Governmental Record, based on false and legally untenable allegations.

2.      Defendants John Roach, Sr., Christopher Milner, Collin County, Texas, Gregory Abbott, and Harry White conspired to wrongfully obtain an indictment and prosecute Plaintiff by inventing and perverting law, misleading judges and juries, and taking apart Plaintiff's life and career one piece at a time.

3.      Beyond the fact Plaintiff did not engage in the conduct alleged by Defendants, Defendants knew full well the law did not proscribe any of the alleged conduct. In an attempt to ensure that Plaintiff was convicted despite her innocence, and knowing she committed no criminal act, Defendants intentionally misrepresented the law and facts and secured a wrongful conviction of Plaintiff.

4.      Plaintiff was forced to step down from her judicial position, her license to practice law was suspended for 10 years by the State Bar of Texas Board of Disciplinary Appeals (compulsory action due to convictions), and her reputation and career were devastated. All for the sake of political retribution for defeating the incumbent judicial candidate who preceded Plaintiff on the bench, and for not playing ball with the powers that be.

5.      Ultimately, the criminal case against Plaintiff fell apart when her alleged co-conspirators were held by the Texas Court of Criminal Appeals to be actually innocent and that there was no evidence of any wrongdoing. On May 24, 2017, after spending five and a half years under community supervision, Plaintiff was exonerated by Writ of Actual Innocence. Unfortunately, the damage had already been done. As noted in the Order granting the Writ of Actual Innocence, Plaintiff's civil rights have been violated. Plaintiff now sues to recover for the harm done to her by the corrupt government agents who targeted her unjustly.

# I.
## JURISDICTION AND VENUE

6.      Venue is proper in the Sherman Division, Eastern District of Texas as all actions of which Plaintiff complains occurred in Collin County, Texas.

7.      Subject matter jurisdiction for this cause rests with this Honorable Court as the case involves violations of the United States Constitution and other federal law.

8.      *In personam* jurisdiction is satisfied as to Defendant Collin County because it is a governmental entity and therefore resides in Texas and/or transacts business in the State of Texas, such that this Court's exercise of personal jurisdiction over the Defendant is consistent with all applicable statutory requirements and constitutional guarantees.

9.      *In personam* jurisdiction is satisfied as to Defendants John Roach, Sr., Christopher Milner, Gregory Abbott, and Harry White because they reside in Texas and/or transact business in the State of Texas, such that this Court's exercise of personal jurisdiction over the Defendants is consistent with all applicable statutory requirements and constitutional guarantees.

# II.
## PARTIES AND SERVICE

10.     Plaintiff, Suzanne H. Wooten, is a resident of Collin County, Texas and the former presiding judge for the 380th Judicial District Court in Collin County, Texas. Judge Wooten may only be contacted through her counsel.

11.     Defendant Collin County is a political subdivision of the State of Texas. Collin County can be served through its County Administrator Bill Bilyeu, Collin County Administration Building, 2300 Bloomdale Rd., Suite 4192, McKinney, Texas 75071.

---

12.     Defendant, John Roach, Sr., (in his individual capacity and individually referred to as "Defendant Roach"), was the District Attorney of Collin County during the relevant period for this lawsuit. Defendant Roach has been sued individually for his actions undertaken while in the course and scope of his employment as the District Attorney for Collin County and while acting under the color of state law. Defendant Roach may be served through the Collin County Administrator Bill Bilyeu, Collin County Administration Building, 2300 Bloomdale Rd., Suite 4192, McKinney, Texas 75071.

13.     Defendant, Christopher Milner (in his individual capacity and individually referred to as "Defendant Milner"), was an Assistant District Attorney in the Collin County District Attorney's Office during the relevant period for this lawsuit. Defendant Milner has been sued individually for his actions undertaken while in the course and scope of his employment with the Collin County District Attorney's Office and while acting under the color of state law. Defendant Milner may be served at 1939 Gullwing Drive, Rockwall, Texas 75087.

14.     Defendant, Gregory Abbott, (in his individual capacity and individually referred to as "Defendant Abbott"), served as Attorney General for the State of Texas during the relevant period for this lawsuit. Defendant Abbott has been sued individually for his actions undertaken while in the course and scope of his employment with the State of Texas and while acting under the color of state law. Defendant Abbott may be served at Office of the Governor, State Insurance Building, 1100 San Jacinto, Austin, Texas 78701.

15.     Defendant, Harry White (in his individual capacity and individually referred to as "Defendant White"), was an Assistant Attorney General for the State of Texas during the relevant period for this lawsuit. Defendant White has been sued individually for his actions undertaken while in the course and scope of his employment with the Office of the Attorney

General for the State of Texas and the Collin County District Attorney's Office, and while acting under the color of state law. Defendant White may be served at 1000 8th Ave # 200, Fort Worth, Texas 76104.

## III.
## FACTS

16.     On March 4, 2008, Plaintiff, Suzanne Wooten, defeated the incumbent Judge Charles Sandoval in the Republican primary election for the 380th District Court Judge in Collin County, Texas.  In the history of Collin County, Texas, an incumbent district judge had not been challenged for re-election until Plaintiff won the primary by a landslide.

17.     The following day, Judge Sandoval went to the Collin County District Attorney's Office (CCDAO) to complain about Judge Wooten. Judge Sandoval felt there was no way Judge Wooten could have won the Republican primary election without cheating, insinuating to the CCDAO that they needed to find a crime.

18.     The CCDAO decided to conduct its own investigation into Judge Wooten's campaign and began grand jury proceedings to aid in their investigation.

19.     Law enforcement did not initiate this investigation, nor did law enforcement aid in this investigation. This investigation originated and was subsequently conducted by the CCDAO and, later, by the Office of the Attorney General (OAG) acting in conjunction with the CCDAO. The investigation lasted over two years before Judge Wooten was initially indicted on October 14, 2010. Another nine months went by before the final indictment against Judge Wooten was filed on July 14, 2011.

20.     This case involved three other co-defendants. Two of the co-defendants were a married couple named David Frederick Cary and Stacy Stine Cary (Collectively "the Carys"). The third co-defendant was James Stephen Spencer (Spencer), a consultant who assisted the

Carys with other matters and was employed by Judge Wooten as her media consultant during her judicial campaign. Each of the indictments for the Carys and Judge Wooten are substantially identical as the allegations track the same statutory language and same alleged scheme of conduct.

21.     The CCDAO and the OAG moved forward with a prosecution of Judge Wooten knowing there was no probable cause and that a crime had not been committed. The theory of prosecution was that the Carys gave itemized monetary contributions to Judge Wooten, through Judge Wooten's media consultant, Spencer, in exchange for Judge Wooten's decision to proceed with a campaign to unseat the incumbent judge of the 380th Judicial District Court. The problem with this theory of prosecution is that, even if true, these actions would not be illegal – and the CCDAO and OAG knew that these actions were not illegal when they moved forward with the prosecution.

22.     The CCDAO had ulterior malicious political motivations for prosecuting Judge Wooten. The CCDAO wanted Judge Wooten off the bench because the CCDAO disagreed with Judge Wooten's rulings in criminal cases. This motivation is evident from a myriad of evidence including, a CCDAO internal email and the redaction of incriminating statements before dissemination of that email as a response to a public information request, the pressuring of witnesses, destruction of evidence, and the clear misuse and abuse of the grand jury process. Additionally, it was widely known in the legal community that the CCDAO had a Special Crimes Division headed by Defendant Milner who used heavy-handed tactics and strategies to investigate, intimidate and often indict those who were his enemies.   As detailed below, numerous lawyers, elected officials and courthouse staffers were target by CCDAO during the two terms former District Attorney Roach ran the CCDAO and employed Defendant Milner.

The OAG knowingly aided the CCDAO in accomplishing their goals by way of prosecuting Judge Wooten when it was clear a crime had not occurred.

23.     After Judge Wooten was unconstitutionally convicted at trial, she was exonerated through the granting of her 11.072 Writ of Habeas Corpus Declaring Actual Innocence as a Matter of Law with the 366th Judicial District Court in Collin County, Texas on May 24, 2017, with the convictions deemed void *ab initio* by the District Court.  The Court relied upon the Court of Criminal Appeals rulings in *Stacy Stine Cary v. State*, 507 S.W.3d 750 (Tex. Crim. App. 2016) and in *David Cary v. State*, 507 S.W.3d 761 (Tex. Crim. App. 2016), that the allegations in the indictments, even if true, were not crimes under Texas law as a matter of law.

24.     As a result of this baseless investigation, prosecution, and conviction, Judge Wooten was forced out of her position as judge of the 380th Judicial District Court, exactly as the CCDAO and OAG planned.

25.     This action is brought pursuant to 42 U.S.C. § 1983, the United States Constitution, Texas Constitution, Texas statutes, and common law.

**Office of the Attorney General Involvement**

26.     At the time of the CCDAO's and the OAG's investigation and prosecution of Judge Wooten, Gregory Abbott was the Attorney General of Texas.

27.     In December of 2008, CCDAO Chief of Special Crimes Unit Chris Milner requested the assistance of the Criminal Prosecution Division of the Office of the Attorney General of Texas.in investigating a case against Judge Wooten. According to Defendant White, Defendant Milner requested Defendant White because Defendant Milner had experience working with Defendant White on previous occasions and that Defendant White had "expertise"

prosecuting election violations. Defendant Abbott, the OAG, allowed his office and staff, including Defendant White, to assist the CCDAO in the investigation into Judge Wooten.

28.     The OAG had additional/greater resources for the CCDAO and was able to provide Attorney General Auditor Kyle Swihart along with Defendant White. Defendant White would be assisting the CCDAO as a Special Assistant District Attorney, while the CCDAO would maintain control of the investigation.

29.     In an interview with FBI investigators in mid-July of 2010, Defendant White confirmed that he became involved in the investigation of Judge Wooten in December of 2008 and stated to the FBI that he did not know why the CCDAO did not recuse themselves at the beginning of the Judge Wooten investigation. Defendant White misrepresented to the FBI that he had been appointed the Attorney Pro Tem in February of 2010. Further, Defendant White informed the FBI that CCDAO thought that once Greg Willis was elected Collin County District Attorney, the "Wooten investigation would be discontinued if not transferred to the AG's office". It will become clear that the CCDAO wanted to maintain control over the malicious investigation and prosecution of Judge Wooten under the guise of the OAG leading the charge.

30.     In late-July of 2010, 8 days after Defendant White's meeting with the FBI, Defendant Milner and Defendant Roach requested that the Office of the Attorney General and its designee (Defendant White) become the Attorney *Pro Tem* for the Judge Wooten investigation. The Order of Recusal and Appointing Attorney Pro Tem signed by Judge Mark Rusch on July 22, 2010 included a provision that the CCDAO may "render such non-prosecutorial support, investigative aid and other assistance as the Attorney Pro Tem deems proper".  This would give control of the investigation to the OAG. However, Defendant White had been working as a Special Assistant District Attorney with the CCDAO since December of 2008 and was formally

"deputized" as an Assistant District Attorney for Collin County in September of 2009 when this "changing of the guard" occurred in July of 2010.

31.     Defendant Abbott failed to intervene when the investigation his office was continuing to be a party to was clearly unconstitutional, illegal, and without merit.

**Abuse of the Grand Jury Process**

32.     In September of 2008, the first known grand jury subpoena was issued as a result of a criminal investigation against Judge Wooten, before Judge Wooten took the bench in January of 2009.  At least 9 grand jury subpoenas for documents were issued in the Fall of 2008 alone.

33.     In September 2009, Defendant Milner started issuing grand jury subpoenas for Judge Wooten's employees, numerous people who contributed funds to Judge Wooten's campaign, and other persons related to the campaign.

34.     The CCDAO used at least five grand juries to investigate this criminal case against Judge Wooten. More specifically, the grand juries of the Fall of 2008, Spring of 2009, Fall of 2009, Spring of 2010, and Fall of 2010. Four of the five grand juries were used to subpoena bank records, phone records, credit card documents, personal records, emails, and various campaign-related vendor information. Three of the five grand juries was used to subpoena witnesses.

35.     District Judge Chris Oldner presided over one of the grand juries (Fall of 2009). That grand jury wrote a letter to Judge Oldner explaining that they felt the case against Judge Wooten was unnecessary, a waste of tax payers dollars, and that no crime had been committed.

36.     In April of 2010, the Federal Bureau of Investigation (FBI) began investigating three attorneys in the CCDAO: District Attorney John Roach, First Assistant District Attorney

Greg Davis, and Chief of Special Crimes Unit Assistant District Attorney Chris Milner, for allegations that the CCDAO was misusing the grand jury to create politically motivated investigations against Judge Wooten and Collin County District Attorney candidate Greg Willis.

37.     The FBI investigation involved numerous interviews. One of those interviews was with grand jury member, D.J.,[1] who was on the grand jury that heard Wooten and Willis investigations. According to D.J., Assistant District Attorney (ADA) Paul Anfosso usually presented the cases to the grand jury. The exceptions were usually cases involving crimes against children in which the specific ADA assigned the case made the presentations. There were two exceptions. These exceptions were articulated as being the District Attorney's (DA's) top two cases and were presented by ADA's Davis and Defendant Milner. The cases involved Collin County Judges Greg Willis and Judge Wooten.

38.     D.J. stated that the two cases against Judge Greg Willis and Judge Wooten were completely different from all the other cases heard by the grand jury. The presentation of evidence for the two cases was strange. The prosecutors, Davis and Defendant Milner, often set the stage for a witness by telling the grand jury what the witnesses would testify about. The prosecutors often made comments to both D.J. individually and to the grand jury as a whole, which led D.J. to believe both cases may have had underlying personal issues.

39.     D.J. described the cases against Judge Wooten and Judge Greg Willis as being needlessly drug out, as no serious evidence was ever presented, even though prosecutors kept promising that a "star witness" would arrive who would make sense of all of it. These two cases were handled totally different from other cases, which moved along more rapidly.

---

[1] The name of this individual who served on the grand jury is being withheld to protect their identity.

40.    D.J. and other grand jury members started articulating to Davis and Defendant Milner their concerns as to the DA's Office having conflicts of interest with these cases. D.J. told the prosecutors that the investigation seemed more like a political witch-hunt. D.J. asked Davis if his boss (CCDA John Roach) knew what the prosecutors were doing. Davis responded that of course Roach knew, that was why they were presenting the cases, and that Roach did not like this person (Judge Greg Willis). After that comment, Davis tried to backtrack and told D.J. to forget that D.J. heard that comment.

41.    Defendant Milner kept promising that the grand jury would hear from a "star" witness. This never happened. Defendant Milner kept bringing in DA office employees whose testimonies added nothing new to what had already been presented. He seemed to be dragging out the investigation. D.J. surmised that it was all politically motivated.

42.    The grand Jury asked Defendant Milner to hear Judge Wooten's criminal case, but Defendant Milner refused to present the case to the grand jury. This was done because in the event the grand jury no- billed Judge Wooten, Defendant Milner would have had to provide substantial evidence to reopen the case. By not presenting the case to the grand Jury before its term ended, Defendant Milner could just continue investigating Judge Wooten when the next grand jury's term began. Defendant Milner was grand jury shopping.

43.    On June 24, 2010, the Collin County grand jury (CCGJ) voted eight to three in favor of a 90-day extension to their six-month term. The CCGJ wanted to hear additional findings in the Judge Wooten investigation. Collin County District Judge Ray Wheless was presiding over the grand jury at that time. Judge Wheless denied the grand jury the 90-day extension because he felt the Attorney General (OAG) prosecutor was working on behalf of the CCDAO and not the OAG.

44.     Collin County District Judge and presiding Grand Jury Judge Chris Oldner admitted to Judge Wooten and Collin County District Court Judge Mark Rusch that he (Judge Oldner) had two separate meetings with Davis and Defendant Milner regarding the substance of their investigations against Judge Wooten and Judge Greg Willis. Judge Oldner informed them that he did not believe that Davis and Defendant Milner had presented information that warranted an investigation against Judge Wooten or Judge Greg Willis. Defendant Milner and Davis' responses were that they would eventually gather enough information to indict Judge Wooten and Judge Greg Willis. They just needed more time to investigate.

45.     Prior to Defendant Milner being employed at the CCDAO, grand jury investigations were initiated by law enforcement organizations. There were no independent investigations initiated and conducted by the CCDAO. However, when Defendant Milner started his employment with the CCDAO, the Special Crimes Unit was formed, and grand jury cases began to be initiated from within the Special Crimes Unit.

**Abuse of Power for Political Gain by CCDAO and OAG Members**

46.     Rumors of the CCDAO investigation were wide spread at the courthouse starting in mid-2009 and Defendant Milner would often sit in the back of Judge Wooten's courtroom watching her when he had no case on her docket. Judge Wooten's financial matters with her long-time banking institution started changing in mid-2009 based upon its receipt of grand jury subpoenas for her personal financial records and persons unknown to Judge Wooten were seen to drive by and photograph her home and family.

47.     Defendant Milner and Judge Rusch had a close relationship. Judge Rusch told Judge Wooten that Defendant Milner informed him (Judge Rusch) about details of the Judge Wooten and Judge Greg Willis grand jury investigations. Defendant Milner explained to Judge

Rusch that he wanted to leave the CCDAO with a bang. Judge Rusch had mentioned to Judge Wooten that Defendant Milner was looking to prosecute Dallas District Attorney Craig Watkins on a constable investigation. Further, Judge Rusch told Judge Wooten not to worry about Judge Sandoval, but to worry about the "army" coming after her.

48.    On October 1,2009, Judge Wooten's attorney, Peter Schulte (Schulte) contacted Defendant Milner regarding the CCDAO investigation of Judge Wooten.  Defendant Milner demanded that Schulte meet with him pronto.  Schulte met with Defendant Milner in the Collin County Courthouse and in that meeting, Defendant Milner told Schulte that Judge Wooten had one week to resign, or she was going to be facing indictment and would lose her house, law license, her family, her reputation, and that he would put her in prison for a long time.  When Schulte inquired about the basis for Judge Wooten resigning, Defendant Milner replied that "she knows what she did" and that the "Judge" (Defendant Roach insisted that he be called Judge Roach) would look favorably upon her if she resigned.  Judge Wooten declined to adhere to Defendant Milner's demand and continued her duties as a sitting District Judge.

49.    A meeting took place between Defendant Milner and Spencer. During this meeting, Defendant Milner asked Spencer to sign a blank confession. Defendant Milner explained that he would tell Spencer what he was going to say in the confession after Spencer signed it. Spencer declined to sign the blank confession.

50.    CCDAO Investigator Steve Goodman passed on information that evidence pertaining to the Judge Wooten and Willis investigations was being destroyed within the CCDAO.[2]

---

[2] Mr. Goodman has since claimed in an interview with the FBI to be unaware of any destruction of evidence.

51.     On September 21, 2009, Schulte issued a public information request to the CCDAO for any communication the CCDAO had regarding policies and procedures when presenting cases in Judge Wooten's court. On December 16, 2009, the CCDAO responded to Schulte's request with a copy of an internal email from Davis to ADA Ben Smith and CCDA Roach, which contained a brief paragraph congratulating Smith and ADA Linda Kirklen for their work on a mortgage fraud trial.

52.     On August 28, 2010, the FBI investigation into the CCDAO ended after Defendant White told FBI investigators that the CCDAO had a legitimate investigation against Judge Wooten and that the OAG expected to receive a grand jury indictment in the near future.

53.     Schulte subsequently obtained an additional copy of what appeared to be the same email, but with additional paragraphs in which Davis stated to only conduct a Trial Before Court (TBC) in Judge Wooten and Judge Jill Willis' courts if the ADA's did not have any interest in the outcome of the case and a TBC was the only way to reasonably dispose of the case. The initial email Schulte received was redacted in efforts to hide the fact that the CCDAO did not want Schulte to know of the policies and procedures in Judge Wooten and Judge Jill Willis' courts. This showed that the CCDAO did not like the rulings Judge Wooten was making in criminal cases.

**Pattern of Similar Conduct by the CCDAO**

54.     A pattern of abuse of power and malicious prosecution for political gain plagues the CCDAO. In the time surrounding the gross misuse of the law against Judge Wooten, there has accumulated multiple examples of similar abusive conduct, including the following:

- Collin County District Judge Greg Willis was investigated by Defendant Milner and Assistant Attorney General David Glickler while Greg Willis was a candidate

for the Collin County District Attorney position that would be vacated by Roach. Judge Greg Willis' case was not indicted by the grand jury convened by Defendant Milner.

- Denton County Sheriff Weldon Lucas was indicted by Defendant Milner a day after the election. The indictment against Sheriff Lucas was thrown out by a judge just over one week later.

- Dallas County Sheriff Jim Bowles was indicted by Defendant Milner for allegedly funneling more than $100,000 in political contributions into his personal accounts. The indictment was thrown out by a judge. The provision of the Texas Election Code used by Defendant Milner does not even specify criminal penalties for the alleged violations.

- Dallas County Jail Commissary Vendor Jack Madera was indicted by Defendant Milner only to have the indictment dropped.

- J.V.[3] is a defense attorney who was indicted by Defendant Milner for tampering with a government record. The indictment was later thrown out. Upon information and belief Defendant Milner specifically target J.V. because of a personal vendetta.

- D.W.[4] is a defense attorney who was indicted by Defendant Milner for tampering with a government record. The indictment was later thrown out.

---

[3] The identity of this individual is being withheld to protect them from any additional harm than has already been caused by their wrongful prosecution.

[4] The identity of this individual is being withheld to protect them from any additional harm than has already been caused by this wrongful conduct.

---

**Post Indictment Procedural History**

55.     In addition to filing Motions to Disqualify the Attorney Pro Tem, including a motion to remove the Attorney Pro Tem filed by District Attorney Greg Willis, Judge Wooten filed a number of Motions to Quash the Indictment.  One of the Motions to Quash the Indictment was filed on January 25, 2011.

56.     On March 11, 2011, in a hearing on that Motion to Quash, presiding (visiting) Judge Kerry Russell denied the Motion and stated in part that the "State can charge anyone under any section they want" and ignored the Legislature's intent of preventing this type of indictment against candidates and elected officials.

57.     In July of 2011, Defendant White relayed an offer to Judge Wooten's attorneys that if she resigned, agreed to never run for public office again, and agreed to plead guilty to a misdemeanor election code violation (to be crafted by Defendant White later), they would dismiss the indictment. Judge Wooten's re-election would have been in March of 2012. Judge Wooten again declined the offer and shortly thereafter, Defendant White appeared in front of the sixth Collin County grand jury, presented no witnesses aside from Attorney General Auditor Kyle Swihart (whose testimony was not recorded) and obtained what they titled a "re-indictment" adding the charge of money laundering, *inter alia.*

58.     Judge Wooten, along with the other alleged co-conspirators, was charged by indictment ("re-indictment") on July 14, 2011 4 for six counts of Bribery, one count of Engaging in Organized Criminal Activity, one count of Money Laundering, and one count of Tampering with a Governmental Record.

59.     Judge Wooten's trial was held first. Spencer's trial was held second. Stacy Cary's trial was held third and David Cary's trial was held last.

60.     Judge Wooten, Stacy Cary, and David Cary were each convicted by different juries. Spencer opted to take a plea deal and was sentenced to probation. David Cary received 14 years confinement, serving 19 months of such sentence in a prison gang unit before his release, and the other two (including Spencer) were placed on probation.

61.     The Carys were able to directly appeal their cases. Stacy Cary's case was appealed first.  The Dallas 5th District Court of Appeals affirmed Stacy Cary's conviction. *See, Stacy Cary v. State,* 05-12- 01421-CR, 2014 WL 4261233 (Tex.App. - Dallas 2015). However, in his dissenting opinion, Justice Kerry P. Fitzgerald offered a scathing dissent, stating that "with respect to the bribery charges at the heart of this case, this case is most unusual because the State's evidence is not merely insufficient - if affirmatively negates an essential element of the bribery charges and *proves appellant not guilty." Id.* at page 1, Dissenting Opinion (Tex.App. - Dallas 2014)". Further, Justice Fitzgerald confirmed that all the other counts of the indictment would fail in their entirety as a result.

62.     Several months later, a unanimous panel of the Dallas 5th District Court of Appeals reversed the convictions of David Cary and rendered acquittals on all counts, finding that there "was insufficient evidence to support his convictions" on all counts (emphasis added). *See, David Cary v. State,* 460 S.W.3d 731 (Tex.App. - Dallas 2015).

63.     The State in the David Cary case and Stacy Cary c a s e ( t h e  O A G ) filed a Petition for Discretionary Review (PDR) with the Court of Criminal Appeals. The Court of Criminal Appeals granted PDR on each case and heard the cases in tandem.

64.     On December 14, 2016, the Court of Criminal Appeals handed down their unanimous opinions in both David and Stacy Cary's cases.

65.      In David Cary's case, the Court of Criminal Appeals affirmed the 5th District

Dallas Court of Appeals opinion and affirmed the acquittal on all counts. *See, David Cary v.*

*State,* PD-0445-15 (Tex. Crim. App. 2016).

66.      In Stacy Cary's case, the Court of Criminal Appeals reversed the opinion of

the 5th District Dallas Court of Appeals and rendered acquittals on all counts as well. *See,*

*Stacy Cary v. State,* PD-1341-14 (Tex. Crim. App. 2016).

67.      In both cases, the Court of Criminal Appeals stated that there was "insufficient

evidence to support [all of their] convictions." *Id.*

## Judge Wooten is Acquitted/Exonerated of Each and Every Allegation Contained in the Indictment

68.      On May 10, 2017, Judge Wooten filed her First Amended Application for 11.072

Writ of Habeas Corpus Declaring Actual Innocence as a Matter of Law with the 366th Judicial

District Court in Collin County, Texas.

69.      On May 24, 2017, the Court granted Judge Wooten's requested relief finding that

the Texas Court of Criminal Appeals, in its decisions in *Stacy Stine Cary v. State*, 507 S.W.3d

750 (Tex. Crim. App. 2016) and in *David Cary v. State*, 507 S.W.3d 761 (Tex. Crim. App.

2016), acquitted those co-defendants on all counts (which were substantially identical to the

charges against Judge Wooten), finding the evidence presented legally insufficient because the

allegations, even if true, were not crimes under Texas law. The Court found that those Opinions

by the highest criminal court in the State of Texas were directly relevant to Judge Wooten's case

and required the Court to GRANT the relief Judge Wooten requested, as a matter of law.

70.      The Court further found that, in light of *Stacy Stine Cary v. State*, 507 S.W.3d 750

(Tex. Crim. App. 2016) and in *David Cary v. State*, 507 S.W.3d 761 (Tex. Crim. App. 2016), the

evidence presented at Judge Wooten's trial was legally insufficient to convict her of the

following nine (9) felony convictions: one (1) count of Conspiracy to Commit Engaging in Organized Criminal Activity, six (6) counts of Bribery, one (1) count of Money Laundering, and one (1) count of Tampering with a Governmental Record with Intent to Defraud/Harm.

71.     ***The Court found a violation of Judge Wooten's due process rights.***

Criminal Activity, six (6) counts of Bribery, one (1) count of Money Laundering, and one (1) count of Tampering with a Governmental Record with Intent to Defraud/Harm. The Court therefore FINDS a violation of Applicant's due process rights.

Order on First Amended 11.072 Writ of Habeas Corpus. 366-81639-2011

**IV.
Count I – 42 U.S.C. § 1983
Violation of Due Process Rights**

72.     Each of the paragraphs of this Complaint is incorporated as if restated fully herein.

73.     As described more fully above, all of the Defendants, while acting individually, jointly and in conspiracy, as well as under color of law and within the scope of their employment, deprived Plaintiff of her constitutional rights. Indeed, a judicial finding has been made that the arrest and prosecution of Plaintiff violated her right to due process. Exhibit A, Order, attached hereto and incorporated herein by reference.

74.     In the manner described more fully above, the Defendants conducted a reckless criminal investigation, knowingly arresting Plaintiff without probable cause and pursued a criminal prosecution of Plaintiff for alleged conduct that was not criminal and based upon "facts" they knew were untrue. Absent this misconduct, the prosecution of Plaintiff could not and would not have been pursued. Moreover, the Defendants continued the prosecution of Plaintiff after they knew, or should have known, that Plaintiff had committed no criminal act.

75.     Defendants' misconduct directly resulted in the unjust arrest and criminal prosecution of Plaintiff, in violation of her rights under the United States Constitution.

76.     As a result of the Defendants' violation of her constitutional rights, Plaintiff suffered injuries, including but not limited to financial harm and emotional distress.

77.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

78.     The misconduct described in this Count was undertaken by employees and agents of the Collin County, including but not limited to Defendants, pursuant to the policy and practices of Collin County to pursue wrongful arrests and convictions through profoundly flawed investigations and false allegations. In this way, Collin County violated Plaintiff's rights by maintaining policies and practices that were the moving force driving the foregoing constitutional violations.

79.     These widespread practices, so well settled as to constitute *de facto* policy of Collin County, were able to exist and thrive because the policymaker(s) with authority over the same exhibited deliberate indifference to the problem, thereby effectively ratifying it.

80.     The widespread practices described in the preceding paragraphs were allowed to flourish because Collin County failed to implement sufficient training and/or any legitimate mechanism for oversight or punishment.

81.     As a result of the Defendants' unconstitutional conduct, Plaintiff sustained, and continues to sustain, injuries including emotional pain and suffering.

## Count II – 42 U.S.C. § 1983
## Violation of Fourth Amendment

82.    Each of the paragraphs of this Complaint is incorporated as if restated fully herein.

83.    As described more fully above, all of the Defendants, while acting individually, jointly and in conspiracy, as well as under color of law and within the scope of their employment, deprived Plaintiff of the clearly established and well-settled constitutional right protected by the Fourth Amendment to U.S. Constitution to be free from unreasonable searches and seizures, including unlawful detention and arrest.

84.    In the manner described more fully above, the Defendants conducted a reckless criminal investigation, knowingly arresting Plaintiff without probable cause and pursued a criminal prosecution of Plaintiff for alleged conduct that was not criminal and based upon "facts" they knew were untrue. Absent this misconduct, the prosecution of Plaintiff could not and would not have been pursued. Moreover, the Defendants continued the prosecution of Plaintiff after they knew, or should have known, that Plaintiff had committed no criminal act.

85.    Defendants' misconduct directly resulted in the unjust arrest and criminal prosecution of Plaintiff, in violation of her rights under the United States Constitution.

86.    As a result of the Defendants' violation of her constitutional rights, Plaintiff suffered injuries, including but not limited to financial harm and emotional distress.

87.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

88.    The misconduct described in this Count was undertaken by employees and agents of the Collin County, including but not limited to Defendants, pursuant to the policy and practices of Collin County to pursue wrongful arrests and convictions through profoundly flawed

investigations and false allegations. In this way, the Collin County violated Plaintiff's rights by maintaining policies and practices that were the moving force driving the foregoing constitutional violations.

89.     These widespread practices, so well settled as to constitute *de facto* policy of Collin County, were able to exist and thrive because policymaker(s) with authority over the same exhibited deliberate indifference to the problem, thereby effectively ratifying it.

90.     The widespread practices described in the preceding paragraphs were allowed to flourish because Collin County failed to implement sufficient training and/or any legitimate mechanism for oversight or punishment.

91.     As a result of the Defendants' unconstitutional conduct, Plaintiff sustained, and continues to sustain, injuries including emotional pain and suffering.

### Count III – 42 U.S.C. § 1983
### Supervisory Liability

92.     Each of the paragraphs of this Complaint is incorporated as if restated fully herein.

93.     The constitutional injuries complained-of herein were proximately caused by a pattern and practice of misconduct which occurred with the knowledge and consent of those of Defendants who acted in a supervisory capacity, such that these Defendants personally knew about, facilitated, approved, and condoned this pattern and practice of misconduct, or else affirmatively turned a blind eye thereto without taking any steps to stop it.

94.     In this way, these Defendants are personally responsible for the complained-of injuries because they knowingly, willfully, or at least recklessly caused the alleged deprivation of Plaintiff's civil rights by their actions or by their deliberately indifferent failure to act.

---

95.     The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

96.     The misconduct described in this Count was undertaken, at least in part, pursuant to Collin County's policies and practices in the manner more fully described above.

97.     As a result of this misconduct, Plaintiff sustained, and continues to sustain, injuries including financial harm, and emotional pain and suffering.

### Count IV – 42 U.S.C. § 1983
### Failure to Intervene

98.     Each of the paragraphs of this Complaint is incorporated as if restated fully herein.

99.     One or more of the Defendants had a reasonable opportunity, had they been so inclined, to prevent another Defendant from violating Plaintiff's rights in the manner described above, but they failed to do so.

100.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

101.     The misconduct described in this Count was undertaken, at least in part, pursuant to Collin County's policies and practices in the manner more fully described above.

102.     As a result of this misconduct, Plaintiff sustained, and continues to sustain, injuries including emotional pain and suffering.

### Count V – 42 U.S.C. § 1983
### Conspiracy to Deprive Constitutional Rights

103.    Each of the paragraphs of this Complaint is incorporated as if restated fully herein.

104.    Defendants John Roach, Sr., Christopher Defendant Milner, Gregory Abbott, and Defendant White (hereinafter the "Individual Defendants") reached an agreement amongst themselves to wrongfully arrest and prosecute Plaintiff for false and legally untenable claims of Bribery, Conspiracy to Commit Engaging in Organized Criminal Activity, Money Laundering, and Tampering with a Governmental Record, and to thereby deprive Plaintiff of her constitutional rights, all as described in the various paragraphs of this Complaint.

105.    In this manner, Defendants, acting in concert with other unknown co-conspirators, have conspired by concerted action to accomplish an unlawful purpose by an unlawful means.

106.    In furtherance of the conspiracy, each of the coconspirators committed overt acts and was an otherwise willful participant in joint activity.

107.    The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

108.    The misconduct described in this Count was undertaken, at least in part, pursuant to Collin County's policies and practices in the manner more fully described above.

109.    As a result of this misconduct, Plaintiff sustained, and continues to sustain, injuries including emotional pain and suffering.

110.    This Count is only brought against the Individual Defendants in their individual capacities and is not brought against any governmental entity or any of the individuals in their official capacities.

## Count VI – 42 U.S.C. § 1983
## Malicious Prosecution

111.    Each of the paragraphs of this Complaint is incorporated as if restated fully herein.

112.    The Individual Defendants caused Plaintiff to be improperly subjected to arrest and criminal prosecution for which there was no legitimate probable cause. Judicial proceedings were instituted and continued maliciously, resulting in injury, and all such proceedings were ultimately terminated in Plaintiff's favor with a judicial finding of actual innocence.

113.    The Individual Defendants accused Plaintiff of criminal activities knowing those accusations to be without genuine probable cause and without support in the law, and they made statements to judges and juries with the intent of exerting influence to institute and continue the judicial proceedings.  Such conduct violated Plaintiff's constitutional protections provided by the Fourth and Fourteenth Amendments to the U.S. Constitution.

114.    Statements the Individual Defendants made regarding Plaintiff's alleged culpability were made with the knowledge that said statements were false. The Individual Defendants withheld the facts of their manipulation from Plaintiff.

115.    The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

116.    As a result of this misconduct, Plaintiff sustained and continues to sustain injuries including financial harm, and emotional pain and suffering. This Count is only brought against the Individual Defendants in their individual capacities and is not brought against any governmental entity or any of the individuals in their official capacities.

### Count VII –
### Abuse of Process

117.    Each of the paragraphs of this Complaint is incorporated as if restated fully herein.

118.    The Individual Defendants made an illegal, improper, or perverted use of the process, a use neither warranted nor authorized by the process.

119.    The Individual Defendants had an ulterior motive or purpose in exercising such illegal, improper, or perverted use of the process. As a result of the Individual Defendants' misconduct, Plaintiff sustained, and continues to sustain, injuries including financial harm, and emotional pain and suffering.

120.    This Count is only brought against the Individual Defendants in their individual capacities and is not brought against any governmental entity or any of the individuals in their official capacities.

### Count VIII –
### 42 U.S.C. § 1983
### *Monell* Liability of Collin County

121.    Collin County had a policy of pursing wrongful arrests and prosecutions without probable cause and without due process.  The policy maker in relation to the wrongful arrests and prosecutions pursued without probable cause and without due process, was Collin County District Attorney John Roach, Sr.

122.    A pattern of similar incidents of abusive arrests and prosecutions plagued Collin County during the relevant periods of this lawsuit. Indeed, multiple examples of abusive conduct accumulated under the reign of District Attorney Roach, including the following:

- Collin County District Judge Greg Willis was investigated by Defendant Milner while he was a candidate for the Collin County District Attorney position that

would be vacated by Defendant Roach. Judge Greg Willis' case was not indicted by the grand jury convened by Defendant Milner and the David Glickler.

- Denton County Sheriff Weldon Lucas was indicted by Defendant Milner a day after the election. The indictment against Sheriff Lucas was thrown out by a judge just over one week later.

- Dallas County Sheriff Jim Bowles was indicted by Defendant Milner for allegedly funneling more than $100,000 in political contributions into his personal accounts. The indictment was thrown out by a judge. The provision of the Texas Election Code used by Defendant Milner does not even specify criminal penalties for the alleged violations.

- Dallas County Jail Commissary Vendor Jack Madera was indicted by Defendant Milner only to have the indictment dropped.

- J.V.[5] is a defense attorney who was indicted by Defendant Milner for tampering with a government record. The indictment was later thrown out.

- D.W.[6] is a defense attorney who was indicted by Defendant Milner for tampering with a government record. The indictment was later thrown out.

123.    The constitutional violations in this case were the direct result of the policy, custom and practice and general atmosphere within the CCDAO in which political arrests and prosecutions were pursued with zeal and without consequence.

124.    The policy of the CCDAO of targeting citizens and elected officials without probable cause to believe they had engaged in any unlawful conduct was the moving force

---

[5] The identity of this individual is being withheld to protect them from any additional harm than has already been caused by their wrongful prosecution.

[6] The identity of this individual is being withheld to protect them from any additional harm than has already been caused by their wrongful prosecution.

behind the violation of Plaintiff's constitutional rights.

125.    It is particularly important to note the CCDAO was fully aware that Plaintiff had not violated any law. Yet, the CCDAO initiated an arrest, conducted a sham investigation, and pursued prosecution of Plaintiff. In doing so, the CCDAO ratified the wrongful acts of its employees, agents, and representatives involved in this case.

126.    The policy, custom, and practice of Collin County was to execute, encourage and/or ratify the arrest and prosecution of individuals and elected officials in Collin County without probable cause and without providing due process. These practices were common and widespread so as to constitute a custom that fairly represents the policy of the Collin County.

127.    At the time of the incident, Defendants John Roach, Sr., Defendant Christopher Milner, and Harry Defendant White were acting pursuant to a custom, policy, practice and/or procedure of the CCDAO. For years, as depicted in countless media accounts, the CCDAO has had a custom and culture of political prosecutions. Defendants' actions constitute a violation of 42 U.S.C. § 1983 and of Plaintiff's clearly established and well-settled rights to be free from unlawful searches, seizures, and prosecutions, as protected by the Fourth and Fourteen Amendments to the U.S. Constitution.

128.    Plaintiff would show that Defendant Collin County is liable because a pattern, practice or policy of constitutional violations existed that led to the violation of Plaintiff's constitutional rights. At the time of Plaintiff's wrongful arrest and prosecution, there was a widespread practice in the CCDAO of abusing prosecutorial powers. The practice was so widespread as to constitute the policy and custom of the Collin County itself.

129.    The CCDAO had, during the relevant time period of this complaint, an informal custom, practice or policy regarding the wrongful arrest and prosecution of individuals without

probable cause of unlawful conduct and without due process.

130.     The above practices, policies, and customs constituted deliberate indifference towards Plaintiff's constitutional rights. The violation of her constitutionally protected rights (including those protected by the Fourth and Fourteenth Amendments) was a direct and foreseeable cause of her injuries. As a result, Plaintiff is entitled to recover actual damages as a matter of law. Plaintiff sues Collin County for actual and exemplary damages. The practices, policies and customs were the moving forces behind the constitutional violations that resulted in the injury of Plaintiff.

**V.**
**NO ABSOLUTE OR QUALIFIED IMMUNITY**

131.     It is anticipated Defendants will raise, or attempt to raise, a defense of absolute immunity. In this regard, Plaintiff points out that Defendants conduct fell outside the actions "intimately associated with the judicial phase of the criminal process" and as such are not afforded absolute prosecutorial immunity. *See Imbler v. Pachtman*, 424 U.S. 409, 430 (1976); *see Burge v. Parish of St. Tammany*, 187 F.3d 452, 478 (5th Cir. 1999) (prosecutor acting as investigator not entitled to absolute immunity). "A prosecutor has no absolute immunity for legal advice given to the police, nor for administrative duties or investigatory functions that do not relate to an advocate's preparation to initiate prosecution or further judicial proceedings." Brown v. City of Houston, 297 F. Supp. 3d 748 (S.D. Tex. 2017), reconsideration denied sub nom. Brown v. City of Houston, Texas, CV H-17-1749, 2018 WL 1333883 (S.D. Tex. Mar. 15, 2018). The U.S. Supreme Court has explained:

> A prosecutor may not shield his investigative work with the aegis of absolute immunity merely because, after a suspect is eventually arrested, indicted, and tried, that work may be retrospectively described as 'preparation' for a possible trial; every prosecutor might then shield himself from liability for any constitutional wrong against innocent citizens by ensuring that they go to trial.

> When the functions of prosecutors and detectives are the same, as they were here, the immunity that protects them is also the same.

Buckley v. Fitzsimmons, 509 U.S. 259, 276, 113 S. Ct. 2606, 2617, 125 L. Ed. 2d 209 (1993).

Consequently, Defendants are not entitled to absolute immunity.[7]

132.    Additionally, Plaintiff pleads that it is clearly established law that every citizen of the United States has a clearly defined constitutional right to be free from an unlawful seizure by law enforcement officials in accordance with the Fourth Amendment to the United States Constitution, as applied to the several States through the Fourteenth Amendment, and are entitled to due process of law under the Fifth Amendment to the United States Constitution, as applied to the several States through the Fourteenth Amendment.  No reasonable government official or agent would have acted as Defendants did under the circumstances of this case, by arresting and prosecuting Plaintiff without probable cause and without providing due process. Consequently, Defendants are not entitled to absolute immunity.

133.    It is anticipated Defendants will raise, or attempt to raise, a defense of qualified immunity. In this regard, Plaintiff pleads that it is clearly established law that every citizen of the United States has a clearly defined constitutional right to be free from an unlawful seizure by law enforcement officials in accordance with the Fourth Amendment to the United States Constitution, as applied to the several States through the Fourteenth Amendment, and are entitled to due process of law under the Fifth Amendment to the United States Constitution, as applied to the several States through the Fourteenth Amendment.  No reasonable government official or agent would have acted as Defendants did under the circumstances of this case, by arresting and prosecuting Plaintiff without probable cause and without providing due process. Consequently, Defendants are not entitled to qualified immunity.

---

[7] Plaintiff maintains that immunity is not available for a prosecutor who initiates and conducts an investigation and procures an indictment for a crime that does not exist.

## VI.
## DAMAGES FOR PLAINTIFF

134.     Due to the wrongful acts of Defendants, Judge Wooten suffered mental anguish.

135.     Due to the wrongful acts of Defendants, Judge Wooten suffered lost wages and diminished earning capacity.

136.     Due to the wrongful acts of Defendants, Judge Wooten is entitled to punitive damages.

137.     Judge Wooten requests costs of court and expenses, including attorneys' fees.

138.     Judge Wooten requests prejudgment interest.

139.     Judge Wooten requests post judgment interest.

140.     Judge Wooten seeks such other and further relief, general and special, legal and equitable, to which she may show herself justly entitled.

## VII.
## JURY DEMAND

141.     Plaintiff, Suzanne H. Wooten, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

## PRAYER

**WHEREFORE,   PREMISES   CONSIDERED**, Plaintiff respectfully prays that Defendants John Roach, Sr., Christopher Milner, Collin County, Texas, Gregory Abbott, and Harry White, be cited to appear and answer herein, and that upon a final hearing of the cause, that this Court enter judgment in her favor and against Defendants, awarding compensatory damages, costs, and attorneys' fees as well as punitive damages against each of the Individual Defendants and any other relief this Court deems appropriate

a.     damages in an amount within the jurisdictional limits of this Court;

b.     all damages, penalties, and attorneys' fees as allowed by 42 U.S.C. §§ 1983 and 1988, and as otherwise may be allowed by federal law;

c.     pre-judgment interest (from the date of injury through the date of judgment) at the maximum rate allowed by law;

d.     post-judgment interest at the legal rate;

e.     costs of the Court; and

f.     such other and further relief to which Plaintiff may be entitled at law or equity.

Respectfully submitted,

**SCOTT H. PALMER, P.C.**

/s/ *Scott H. Palmer*
SCOTT H. PALMER
State Bar No. 00797196
JAMES P. ROBERTS
State Bar No. 24105721
15455 Dallas Parkway, Suite 540
Addison, Texas 75001
Telephone:     214.987.4100
Facsimile:     214.922.9900
scott@scottpalmerlaw.com

**ATTORNEYS FOR PLAINTIFF**