# United States District Court

## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| SUZANNE H. WOOTEN | § | |
| | § | |
| v. | § | Civil Action No. 4:18-CV-380 |
| | § | Judge Mazzant |
| JOHN ROACH, SR., CHRISTOPHER | § | |
| MILNER, COLLIN COUNTY, TEXAS, | § | |
| GREGORY ABBOTT and HARRY | § | |
| EUGENE WHITE | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court are Defendants John Roach, Sr. and Christopher Milner's ("CCDAO Defendants") Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. #17), Defendant Collin County, Texas' ("the County") Motion to Dismiss Pursuant to Fed R. Civ. P. 12(b)(6) (Dkt. #18), and Defendants Abbott and White's ("AG Defendants") Motion to Dismiss (Dkt. #20). Having considered the motion and the relevant pleadings, the Court finds that the CCDAO's motion should be denied, the County's motion should be granted in part and denied in part, and the AG's motion should be denied.

## BACKGROUND

As alleged by Plaintiff Suzanne H. Wooten, on March 4, 2008, Plaintiff defeated incumbent Judge Charles Sandoval in the Republican primary election for the 380th District Court Judge in Collin County, Texas by a landslide. The next day, Judge Sandoval approached the Collin County District Attorney's Office (the "CCDAO") to complain about Plaintiff, asserting that she cheated during the election and he wanted the CCDAO to find a crime against her. After this meeting, the CCDAO[1] took it upon themselves to investigate Plaintiff's campaign without the assistance of law

---

[1] Defendant John Roach, Sr. was the elected Collin County District Attorney at this time. Defendant Cristopher Milner was an assistant district attorney in Collin County at this time, and participated in the case against Plaintiff.

enforcement.  Eventually, the Office of the Attorney General[2] (the "OAG"), joined in the case against Plaintiff.  The investigation lasted over two years before Plaintiff was initially indicted on October 14, 2010, with the final indictment filed on July 14, 2011.

The theory of the criminal investigation and prosecution against Plaintiff was that a married couple, David Frederick Cary and Stacy Stine Cary ("the Carys") gave itemized monetary contributions to Plaintiff, through the Carys consultant who also happened to be Plaintiff's media consultant, James Stephen Spencer.  The Carys and Spencer were co-defendants in the criminal prosecution.  Plaintiff and the Carys were all tried separately, and convicted by three different juries.  Specifically, Plaintiff's jury found her guilty of six counts of bribery, one count of engaging in organized criminal activity, one count of money laundering, and one count of tampering with a governmental record.  After these three trials, Spencer took a plea deal.  The Carys appealed their convictions.  The Dallas Court of Appeals affirmed Stacy Cary's conviction but several months later a different panel determined David Cary should be acquitted on all counts.  Both cases were then appealed to the Texas Court of Criminal Appeals.  On December 14, 2016, the Texas Court of Criminal Appeals determined that the Carys should be acquitted on all counts, as the allegations against the Carys were not actually a crime pursuant to the relevant statutes.  *Stacy Cary v. State*, 507 S.W.3d 750 (2016); *David Cary v. State*, 507 S.W.3d 761 (2016).

Based on these holdings, on May 10, 2017, Plaintiff filed her First Amended Application for 11.072 Writ of Habeas Corpus Declaring Actual Innocence as a Matter of Law with the 366th Judicial District in Collin County, Texas.  On May 24, 2017, the 366th Judicial District in Collin County granted the requested relief "finding the evidence presented legally insufficient because the allegations, even if true, were not crimes under Texas law."  (Dkt. #3 at p. 1).  The 366th

---

[2] Defendant Gregory Abbott was the Attorney General for the State of Texas at this time.  Defendant Harry Eugene White was an assistant attorney general at this time and participated in the case against Plaintiff.

Judicial District in Collin County further determined that because the evidence was legally insufficient to convict her of the nine felony charges, there had been a "violation of the Applicant's due process rights." (Dkt. #3 at p. 1).

Based on this set of facts, Plaintiff filed suit on May 23, 2018 (Dkt. #1). On May 29, 2018, Plaintiff amended her complaint (Dkt. #10) suing the CCDAO Defendants, the AG Defendants, and the County for violation of her due process rights, violation of the fourth amendment, conspiracy to deprive constitutional rights, and malicious prosecution, among other causes of action and theories of liability. On July 30, 2018, the CCDAO Defendants (Dkt. #17), the County (Dkt. #18), and the AG Defendants (Dkt. #20) filed their motions to dismiss Plaintiff's amended complaint asserting, among other things, immunity. On September 10, 2018, Plaintiff filed a response to the CCDAO Defendants' motion (Dkt. #29), the AG Defendants' motion (Dkt. #30), and the County's motion (Dkt. #31). On September 24, 2018, the CCDAO Defendants (Dkt. #32), the AG Defendants (Dkt. #35), and the County (Dkt. #33) filed a reply. Finally, on October 1, 2018, Plaintiff filed a sur-reply to the AG Defendants' reply (Dkt. #36) and the County's reply (Dkt. #37). Plaintiff did not file a sur-reply to the CCDAO Defendants' reply.

## LEGAL STANDARD

The Federal Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded

facts in the plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then determine whether the complaint states a claim for relief that is plausible on its face. "'A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)). "But where the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (citation omitted). This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

## ANALYSIS

All Defendants in this case move to dismiss Plaintiff's claims based on a variety of theories. The Court addresses Defendants arguments in turn, either individually or grouped together when applicable.

### I.     Prosecutorial Immunity

The CCDAO Defendants and the AG Defendants both move to dismiss Plaintiff's claims asserting that they are entitled to absolute immunity.

The Supreme Court of the United States established that prosecutors are "immune for a civil suit for damages under § 1983." *Imbler v. Pachtman*, 424 U.S. 409, 430, 96 S. Ct. 984, 47 L.Ed.2d 128 (1976). However, prosecutors are not entitled to immunity simply based on their title, instead courts are to look to the "'functional nature of the activities' of which the plaintiff complains." *McGruder v. Necaise*, 733 F.2d 1146, 1148 (5th Cir. 1984) (citations omitted); *accord Imbler*, 424 U.S. at 431, *Kalina v. Fletcher*, 522 U.S. 118, 126, 118 S. Ct. 502, 139 L.Ed.2d 471 (1997). It is the prosecutor's burden to establish that the "functional nature of the activities" are protected by prosecutorial immunity. *Buckley v. Fitzsimmons*, 509 U.S. 259, 274, 113 S. Ct. 2606, 125 L.Ed.2d 209 (1993).

Prosecutors are immune "insofar as that conduct is 'intimately associated with the judicial phase of the criminal process.'" *Burns v. Reed*, 500 U.S. 478, 486, 111 S. Ct. 1934, 114 L.Ed.2d 547 (1991) (citations omitted). This does not mean that only actions made during trial are protected; the courts have recognized that "'the duties of the prosecutor in his role as advocate for

the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom.'" *Id.* (citations omitted).  The Fifth Circuit determined that prosecutorial immunity extends to "investigating . . . a criminal prosecution." *Cook v. Hous. Post*, 616 F.2d 791, 793 (5th Cir. 1980) (citing *Henzel v. Gerstein*, 608 F.2d 654 (5th Cir. 1979); *Conner v. Pickett*, 552 F.2d 585 (5th Cir. 1976)).  However,

> [t]here is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial [, in other words, investigating a criminal prosecution], on the one hand, and the detective's roles in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested on the other hand.  When a prosecutor performs investigative functions normally performed by a detective or police officer, it is "neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other."

*Buckley*, 509 U.S. at 273 (citations omitted).  As such, the Supreme Court of the United States held that "[a] prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity." *Id.*  Based on this holding, a district court within the Fifth Circuit, has held that "[a] prosecutor has no absolute immunity for legal advice given to the police, nor for administrative duties or investigatory functions that do not relate to an advocate's preparation to initiate prosecution or further judicial proceedings." *Brown v. City of Hous.*, 297 F. Supp. 3d 748, 769 (S.D. Tex. 2017).  "[T]he existence of probable cause with respect to a particular suspect is a significant factor to be used in evaluating the advocatory nature [, as opposed to the investigatory nature,] of prosecutorial conduct." *Cousin v. Small*, 325 F.3d 627, 633 (5th Cir. 2003) (citing *Buckley*, 509 U.S. at 274).  With these guiding principles, the Court looks to the specific arguments raised by the CCDAO Defendants and the AG Defendants.

**A.  The CCDAO Defendants**

The CCDAO Defendants claim that their limited and early involvement in the process of Plaintiff's ultimate prosecution and conviction, is protected by prosecutorial immunity.  The CCDAO Defendants allege that their involvement is limited to appearing in front of the grand jury and actions in preparation to be in front of the grand jury.  According to the CCDAO Defendants, these functions are intimately associated with the judicial phase, such that these actions are guaranteed prosecutorial immunity.  Plaintiff counters that while presenting information before the grand jury and preparation of such can be protected by immunity, the CCDAO Defendants' actions here are not.  According to Plaintiff, the CCDAO Defendants' conduct surrounding the grand jury were purely investigative, as opposed to prosecutorial in nature, and were done without probable cause.

Plaintiff alleges that after she defeated the incumbent, the incumbent approached the CCDAO alleging Plaintiff cheated in the election and urging the CCDAO to find a crime.  Subsequently, the CCDAO launched its investigation into Plaintiff and her campaign.  The CCDAO conducted this investigation on its own without the help of law enforcement.  To further its investigation, the CCDAO, through Defendant Milner,[3] began issuing grand jury subpoenas.  In the Fall of 2008 alone, nine grand jury subpoenas were issued for documents.  The following fall, Defendant Milner began issuing grand jury subpoenas for Plaintiff's employees, people who contributed to Plaintiff's campaign, and other people related to the campaign.  A total of six different grand juries were used to investigate Plaintiff: the grand juries of the Fall of 2008, Spring of 2009, Fall of 2009, Spring of 2010, Fall of 2010, and Fall of 2011.  Four of the six were used to subpoena bank records, phone records, credit card documents, personal records, emails, and

---

[3] It is interesting to note that generally another assistant district attorney presented cases to the grand jury; however, when it came to Plaintiff's case, Defendant Milner presented the case to the grand jury.

various campaign-related vendor information. Three of the six were used to subpoena witnesses. According to Plaintiff, all of this occurred without probable cause. Not only that, but it is alleged that Defendant Milner admitted to Collin County District Judge Chris Oldner, the judge presiding over the Fall 2009 Grand Jury, that, although they did not have enough information to indict Plaintiff, they would continue to gather information through their investigation. Moreover, even though the CCDAO Defendants maintain that they only had limited and early involvement, because the OAG took over the case as the Attorney *Pro Team*, the CCDAO was permitted to "render such non-prosecutorial support, investigative aid and other assistance as the Attorney Pro Team deems proper."

Based on these allegations, the CCDAO Defendants conduct is along the lines of the conduct described in *Buckley*. The CCDAO Defendants were acting as investigators searching for probable cause, as opposed to acting as prosecutors with probable cause preparing for prosecution. *Buckley*, 509 U.S. at 273 (citations omitted). As such, at this time, prosecutorial immunity does not protect the actions of the CCDAO Defendants.

### B. The AG Defendants

The AG Defendants argue that they are entitled to prosecutorial immunity. First, Defendant Abbott contends that, as a supervisor, he is entitled to the same immunity of those that he is supervising. Defendant White contends that because the OAG did not intervene in the case until after the investigatory phase, he is entitled to prosecutorial immunity. Accordingly, the AG Defendants maintain that they only functioned in a capacity that was intimately associated with the judicial phase of the case against Plaintiff. Plaintiff counters that Defendant Abbott affirmatively argued that he falls outside the scope of prosecutorial immunity and that Plaintiff has

sufficiently pleaded, for purposes of a motion to dismiss, that Defendant White was part of the investigation against Plaintiff.

As an initial matter, Defendant Abbott is correct that, as a supervisor of the assistant attorney generals, he is immune to the extent that, in this case, Defendant White, is immune. *Van de Kamp*, 555 U.S. at 347 (emphasis in original) (explaining that not protecting the supervisor would "create practical anomalies. A trial prosecutor would remain immune . . . but her supervisor might be liable for *negligent* training or supervision . . . . [Thereby creating a situation where] a plaintiff could restyle a complaint charging a trial failure so that it becomes a complaint charging failure of training or supervision [essentially] eviscerate[ing] *Imbler*."). As such, to determine the immunity of Defendant Abbott, the Court must look to the immunity of Defendant White.

The Court finds, based on the allegations against White, that, at this stage, some of his actions are protected by prosecutorial immunity and some of his actions are not. The Court addresses the allegations against Defendant White in turn.

### 1. Involvement Starting in December 2008

The AG Defendants maintain that when Defendant White became involved in Plaintiff's case it was "well after the investigation was commenced by the CCDAO" and that at that point Plaintiff was already a clearly identified suspect and the CCDAO already had probable cause, comparing the case to *Ramirez*. However, Defendant White was involved in the case much earlier than the point when he was appointed to the Attorney *Pro Team*. After Plaintiff defeated the incumbent on March 4, 2008, the CCDAO almost immediately began an investigation into her campaign. The first known grand jury subpoena was issued in September 2008. Three months later, Defendant Milner, on behalf of the CCDAO, requested the assistance of the OAG specifically requesting Defendant White for his "expertise" in election violations. Defendant White confirmed

to the FBI that he started assisting on Plaintiff's case in December 2008, prior to Plaintiff taking the bench.

Moreover, the facts of this case are distinguishable from *Ramirez*. The Northern District of Texas in *Ramirez* held that a prosecutor's actions in attending and allegedly directing a line-up were "continuing to develop the State's case against *identified* suspects, not attempting to identify new suspects. Plaintiffs had already been indicted for the murder of Cruz, and by this time [the prosecutors] had the majority of their witnesses and evidence in place for trial." *Ramirez v. Abreo*, No. 5:09-cv-190-C, 2010 WL 11565430, at *10 (N.D. Tex. Jan. 20, 2010). Here, according to the allegations, this was not a case where the police investigated a crime to find a suspect, but rather where the prosecutors investigated a suspect to find a crime. Thus, the fact that Plaintiff was already identified as "the suspect" at the time Defendant White joined the investigation is irrelevant in this case. Further, there is no allegation that the CCDAO had probable cause by December of 2008, and in fact, the allegations suggest that the Plaintiff was investigated for at least another year and a half before ever even seeking an indictment against Plaintiff. Finally, Plaintiff had not yet been indicted, nor were the prosecutors in this case anywhere close to having even enough evidence to get an indictment, much less to be prepared to try the case. As such, the AG Defendants' reliance on this case, and this reasoning, is unavailing.

In this case, and at this stage, there are no allegations, that between December 2008 and, at the earliest, July 22, 2010, anything occurred that was tangentially related to the judicial phase of Plaintiff's prosecution. Thus, Defendant White's involvement beginning in December 2008 plausibly suggests that he was involved in the investigation[4] of Plaintiff.

---

[4] The AG Defendants point out the complaint alleges that the CCDAO had control of the investigation; however, Defendant White was deputized as an assistant district attorney for Collin County in September 2009 operating under Defendant Roach's authority.

## 2. June 2010 Meeting and Hearing

Plaintiff alleges that the district judge presiding over the Spring 2010 Grand Jury declined to extend the grand jury's six-month term on June 24, 2010. Despite this ruling, Plaintiff claims that on June 28, 2010, Defendant White reached out to Plaintiff's counsel requesting she appear at an added grand jury session, which Plaintiff was not aware had not been approved. At that time, Plaintiff's counsel and Plaintiff offered to meet with Defendant White, and others, on June 29, 2010. The June 29, 2010 meeting was very short and Defendant White had no questions for Plaintiff at that time. Plaintiff alleges that she perceived the meeting was an attempt to intimidate her. Subsequently, Plaintiff learned of the ruling that the extension had been denied; accordingly, on June 29, 2010, Plaintiff's counsel filed a Motion to Quash the Illegally Re-Assembled Grand Jury. On June 30, 2010, the district court held a hearing on the motion, with Plaintiff's counsel and Defendant White appearing at the hearing. The motion to quash was granted.[5] The AG Defendants argue that any meeting prior to a grand jury and any pretrial hearing are protected by prosecutorial immunity. Plaintiff disagrees.

The Court acknowledges that "interviewing witnesses who will appear before the grand jury" generally falls "within the *Imbler* shelter." *Brown*, 297 F. Supp. 3d at 770. However, as identified earlier, not every grand jury proceeding is protected by the *Imbler* shelter. Accordingly, it naturally follows that interviewing a witness before a grand jury will not always fall within the *Imbler* shelter, particularly when the grand jury proceeding itself does not fall within the *Imbler* shelter. Here, at the motion to dismiss stage, it is at least plausible that this "grand jury proceeding"

---

[5] The district court held that "The Attorneys representing the State in this matter had absolute[ly] NO authority to re-assemble this Court's Grand Jury after it was discharged on June 24, 2010 without permission of the Court . . . . Therefore, there is no authority for this Court's Grand Jury to re-assemble to conduct any additional business. Any such business will be VOID and have NO AUTHORITY. Any person who violates this order will immediately be held in CONTEMPT." (Dkt. #10 at ¶ 47) (emphasis in original).

would not be intimately connected with the judicial phase of the process, as it was expressly against a direct order of the district court and, ultimately, never held upon threat of contempt. Additionally, prior to the end of the grand jury's term in Spring of 2010, the Spring 2010 Grand Jury requested to hear the criminal case against Plaintiff but Defendant Milner refused. It is unlikely that less than a week later the prosecution had probable cause to present their case against Plaintiff. *See Cousin*, 325 F.3d at 633 (citing *Buckley*, 509 U.S. at 274) (holding "[T]he existence of probable cause with respect to a particular suspect is a significant factor to be used in evaluating the advocatory nature [as opposed to the investigatory nature] of prosecutorial conduct."). As such, based on the pleadings, the Court finds it plausible that this fits more in line with Defendant White's administrative and investigate role as opposed to his prosecutorial role.

### 3. Remaining Allegations

Plaintiff also alleges the following: (1) that Defendant White was appointed to the Attorney *Pro Team* on July 22, 2010, *Imbler*, 424 U.S. at 421, *Quinn v. Roach*, 326 F. App'x 280, 292 (5th Cir. 2009), *Bellamy v. Harris Cty.*, No. H–16–02925, 2017 WL 2080157, at *2 (S.D. Tex. May 15, 2017); *Liverman v. Denton Cty.*, No. 4:16cv801, 2017 WL 1088340, at *2 (E.D. Tex. Mar. 23, 2017); (2) that he provided evidence, although maybe scant, to the July 2011 Grand Jury to obtain a "re-indictment" or indictment against Plaintiff, *Buckley*, 509 U.S. at 273, *Cousin*, 325 F.3d at 635, *Brown*, 297 F. Supp. 3d at 770; (3) that he relayed an offer to dismiss the indictment if she agreed to resign and never run again, *Humble v. Foreman*, 563 F.2d 780, 781 (5th Cir. 1977), *overruled on other grounds*, *Sparks v. Duval Cty. Ranch Co.*, 604 F.2d 976, *Bellamy*, 2017 WL 2080157; (4) and Defendant White intentionally withheld, for a period of time, exculpatory evidence in the summer of 2011, *Cousin*, 325 F.3d at 635; *Henzel*, 608 F.2d at 657. These actions taken by Defendant White, regardless of the motive, fit squarely within the realm of prosecutorial

immunity as identified by *Imbler*. Accordingly, the Court finds that these allegations taken by Defendant White are absolutely immune and should not be included going forward in this case.

Although these actions are all covered by prosecutorial immunity that "does not retroactively transform that [previous] work from the administrative [or investigative] into the prosecutorial." *Buckley*, 509 U.S. at 275–76. Thus, this finding does not change the Court's previous holdings that certain actions taken by Defendant White were not protected by prosecutorial immunity for purposes of defeating a motion to dismiss.

## II. Qualified Immunity

The CCDAO Defendants and the AG Defendants both assert that even if they are not immune based on prosecutorial immunity, they are protected by qualified immunity. Plaintiff disagrees.

Public officials are immune from suit under 42 U.S.C. § 1983 unless they have "violated a statutory or constitutional right that was 'clearly established' at the time of the challenged conduct." *Plumhoff v. Rickard*, 572 U.S. 765, 777, 134 S. Ct. 2012, 188 L.Ed.2d (2014). Qualified immunity is a two-prong inquiry upon which the Court, in its discretion, may resolve either prong first in light of the circumstances of the particular case at hand. *Pearson v. Callahan*, 555 U.S. 223, 236–37, 129 S. Ct. 808, 172 L.Ed.2d (2009). The two prongs are: (1) a statutory or constitutional right was violated on the facts alleged,[6] and (2) the defendant's actions violated clearly established statutory or constitutional rights, which a reasonable person would have known. *Griggs v. Brewer*, 841 F.3d 308, 312 (citing *Flores v. City of Palacios*, 381 F.3d 391, 395 (5th Cir.

---

[6] As properly laid out in the AG's motion to dismiss, the claims of supervisory liability and failure to intervene are incorporated into whether Plaintiff has pleaded a constitutional violation. As such, the Court reserves ruling on these issues contained in the CCDAO Defendants' and the AG Defendants' motions to dismiss. Moreover, the AG Defendants' argument that Plaintiff has failed to sufficiently plead a claim against them will also be addressed within the analysis of qualified immunity. Finally, Collin County's argument that it is not liable because of the immunity of the CCDAO Defendants will only be able to be decided after the qualified immunity issue is decided.

2004)).  "Qualified immunity 'gives government officials breathing room to make reasonable but mistaken judgments,' and 'protects all but the plainly incompetent or those who knowingly violate the law.'"  *Messerschmidt v. Millender*, 565 U.S. 535, 547, 132 S. Ct. 1235, 182 L.Ed.2d 47(2012) (quoting *Ashcroft v. Al-Kidd*, 563 U.S. 731, 743, 131 S. Ct. 2074, 179 L.Ed.2d 1149).

In her responses, Plaintiff requests leave to amend her complaint.  Rule 15(a) of the Federal Rules of Civil Procedure provides that a party may amend its pleading once without seeking leave of court or the consent of the adverse party at any time before a responsive pleading is served.  FED. R. CIV. P. 15(a).  After a responsive pleading is served, "a party may amend only with the opposing party's written consent or the court's leave."  *Id.*  Rule 15(a) instructs the Court to "freely give leave when justice so requires."  *Id.*  The rule "evinces a bias in favor of granting leave to amend."  *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005) (quoting *Lyn–Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir. 2002)).  The Court does not find that an amendment would be futile in this case.  Due to the nature of qualified immunity, the Court finds allowing the Plaintiff to replead will assist the Court in deciding qualified immunity.[7]

## III.    Official Immunity Under State Law

The AG Defendants additionally argue that they are immune from Plaintiff's claims against them based on official immunity.  Plaintiff counters that the AG Defendants have not met their burden to show that they are entitled to official immunity.[8]

---

[7] For example, in her complaint: (1) Plaintiff does not mention her probation, which is a basis for a deprivation of liberty in her procedural due process claim; (2) lacks factual details surrounding her arrest, which is the basis for her false arrest claim; (3) could contain more specifics surrounding her supervisory liability and failure to intervene claims; and (4) could be more specific as to her due process claim—whether she seeks only procedural or also substantive due process and what property and liberty interests are alleged, although some of this information is contained in the briefing, it could be more clearly identified in the complaint.  The Court does not hold that any of the areas are insufficient or that there are no other areas that could be clarified, but merely provides some examples of where some additional clarity could be helpful to the Court.

[8] Plaintiff also asserts that the AG Defendants were not acting within the scope of their authority as she has asserted an ultra vires exception to immunity.  Plaintiff argues that there is a statute that defines the role that the AG Defendants

14

"Government employees are entitled to official immunity from suit arising from the performance of their (1) discretionary duties in (2) good faith as long as they are (3) acting within the scope of their authority." *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994) (citing *Baker v. Story,* 621 S.W.2d 639, 644 (Tex. Civ. App.—San Antonio 1981, writ ref'd n.r.e.); *Wyse v. Dep't of Pub. Safety,* 733 S.W.2d 224, 227 (Tex. App.—Waco 1986, writ ref'd n.r.e.). "Official immunity is an affirmative defense. Thus, the burden is on the defendant to establish all elements of the defense." *City of Lancaster*, 883 S.W.2d at 653 (citing *Perry v. Tex. A & I Univ.,* 737 S.W.2d 106, 110 (Tex. App.—Corpus Christi 1987, writ ref'd n.r.e.), *Montgomery v. Kennedy,* 669 S.W.2d 309, 310–11 (Tex. 1984)).

The Court finds conclusively establishing official immunity at this stage in the litigation to be difficult based on the allegations of this case. At the very least, Plaintiff has alleged that the defendants in this case did not act in good faith. To the contrary, Plaintiff alleges that the defendants acted maliciously in this case, investigating and prosecuting her because she won an election by a landslide and because the CCDAO Defendants disagreed with her rulings in criminal cases. She has also alleged that the AG Defendants acted in concert with the CCDAO Defendants to achieve this goal. Accordingly, while the AG Defendants may have not been the defendants with the initial motive, they continued the malicious behavior of the CCDAO Defendants. As such, at this stage, the AG Defendants are not entitled to official immunity.[9] *See Carter v. Diamond URS Huntsville, LLC*, 175 F. Supp. 3d 711, 742 (S.D. Tex. 2016) (quoting *Wood v. Strickland*, 420 U.S. 308, 322, 95 S. Ct. 992, 43 L.Ed.2d 214 (1975)) (explaining "good faith

___

are allowed to act within when assisting a district attorney's office, and that the AG Defendants acted outside such authority. The Court finds this argument intriguing, but unnecessary to fully develop at this time.

[9] The AG Defendants also argued that they were entitled to official immunity in the same way they were entitled to absolute prosecutorial immunity, which the Court previously determined they are not entitled to at this time.

immunity is not available if the officer asserting that affirmative defense 'took the action with malicious intention to cause a deprivation of constitutional rights or other injury.'").

## IV.     The County's Liability

Plaintiff alleges that the County "had a policy of pursuing wrongful arrests and prosecutions without probable cause and without due process." (Dkt. #10 at p. 28). In relation to this policy, Plaintiff asserts the policy maker is the Collin County District Attorney, Defendant Roach. The County moves to dismiss this claim arguing that liability does not attach to the County based on this policy, because the County has no control over the arrests or prosecution of individuals in Collin County. The County further asserts that, even if the County could be liable, Plaintiff has not sufficiently alleged an actual policy caused her harm in this case.

When alleging a § 1983 claim, a plaintiff may not establish liability against a government entity through *respondeat superior. Deville v. Marcantel*, 567 F.3d 156, 170 (5th Cir. 2009) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L.Ed.2d 611 (1978)); *Wright v. Denison Indep. Sch. Dist.*, No. 4:16-cv-615, 2017 WL 2262778, at *3 (E.D. Tex. May 24, 2017), *memorandum adopting in part*, No. 4:16-cv-615, Dkt. #36 (E.D. Tex. Apr. 19, 2017). Accordingly, plaintiffs must plead and prove that the government entity "*itself* causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385, 109 S. Ct. 1197, 103 L.Ed.2d 412 (1989) (citing *Monell*, 436 U.S. at 694–95). To establish that the government entity caused the constitutional violation, the Fifth Circuit requires a showing that an "official policy" caused the plaintiff's harm. *Deville*, 567 F.3d at 170. The Fifth Circuit has explained that an official policy is:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984).  The Court first addresses whether Defendant Roach is a policy maker for the County and then whether there was actually an official policy in this case.

### A.  The Responsibility of the County Based on the Actions of a District Attorney

The County argues that the alleged policy of "pursuing wrongful arrests and prosecution without probable cause and without due process" is not a policy of the County because the Collin County District Attorney acts on behalf of the State and not on behalf of the County.[10]  The County further argues that it has no control over the arrest or prosecution of individuals in Collin County, and thus, this policy cannot be attributed to the County.  Plaintiff counters that, while a district attorney acting in non-policy making authority acts on behalf the State, the Fifth Circuit has held that a district attorney can act as a policy maker for the county in relation to *Monell* liability.

As previously identified, Plaintiff must state that the County enacted an official policy, which caused her harm in this case.  "Such 'policy' must derive from the government entity's recognized [policy maker] . . . . This ensures plaintiffs do not saddle government entities with vicarious liability for the actions of its agents not in accord with policy."  *Wright*, 2017 WL 2262778, at *3 (citing *Rivera v. Hous. Indep. Sch. Dist.*, 349 F.3d 244, 247–48 (5th Cir. 2003); *Jett v. Dall. Indep. Sch. Dist.*, 7 F.3d 1241, 1245 (5th Cir. 1993); *Bd. of Cty. Comm'rs of Bryan*

---

[10] The County also maintains that this argument is further supported by the fact that the CCDAO Defendants would gain immunity in their official capacity under the 11th Amendment, which is derived from the State.  Because Plaintiff did not sue the CCDAO Defendants in their official capacity, the Court does not venture out to decide the hypothetical situation of, if they had been sued in their official capacity, if the CCDAO Defendants would be immune pursuant to the 11th Amendment.

*Cty. v. Brown*, 520 U.S. 397, 403–04 (1997)).  The Fifth Circuit has described that a district attorney has qualities of both a state official and a county official; explaining, that the district attorney's "office is a local entity, created by the State of Texas and deriving its powers from those of the State, but limited in exercise of those powers to the county, filled by its voters, and paid for with its funds." *Crane v. State of Tex.*, 766 F.2d 193, 194–95 (5th Cir. 1985).  As such, there are certain circumstances in which the district attorney is a policy maker for the State and circumstances when the district attorney is a policy maker for the county.

The Court finds this case most factually similar to *Crane v. State of Texas*.  In *Crane*, the county was alleged to have a policy of issuing arrest warrants without probable cause through the district attorney of the county.  *See generally Crane v. State of Tex.*, 759 F.2d 412 (5th Cir. 1985).  The Fifth Circuit determined that, under these circumstances, the district attorney was "properly viewed as a county official, elected by its voters and responsible for its relevant policy." *Crane*, 766 F.2d at 195.  The Fifth Circuit continued that the county could not "evade[]" "responsibility for violation[s] of the Constitution" simply by asserting that the district attorney works on behalf of the State.  *Id.*  The Court finds subsequent Fifth Circuit decisions to fall in line with this holding. For example, the Fifth Circuit held that when the district attorney was enforcing a State statute, as opposed to acting contrary to state law as was present in *Crane*, the district attorney was acting on behalf of the State instead of the county.  *Echols v. Parker*, 909 F.2d 795, 800–01 (5th Cir. 1990).[11] Moreover, a district court within the Fifth Circuit identified that there is a difference between a county being held liable for a specific action of a district attorney in enforcing state law in his

_____

[11] The Court also notes that in *Brown* the Fifth Circuit pointed out that "Brown does not contend that, apart from the role of Lyford, Upshur county has a policy of charging and arresting innocent people." *Brown v. Lyford*, 243 F.3d 185, 191 (5th Cir. 2001).  While the Court does not speculate on the Fifth Circuit's ruling had that been the argument, the Court does find it noteworthy that it was mentioned before the Court determined that the attorney appointed as attorney *pro team* for the district attorney's office was acting on behalf of the state.

prosecutorial capacity and an official policy of the district attorney and his office accepting or prosecuting cases without probable cause. *Jones v. Pillow*, No. Civ.A.3:02-CV-1825-L, 2003 WL 21356818, at *2 (N.D. Tex. June 10, 2003).[12]

Here, the County is alleged to have a policy of "pursuing wrongful arrests and prosecution without probable cause and without due process." This policy would be outside of the district attorney's role as a prosecutor in one case and instead is the implementing of a policy that is contrary to state and federal law. Additionally, the CCDAO in this case was not attempting to uphold the laws of the State, as the allegations against Plaintiff were not a crime under the laws of the State. As such, because the policy is not about enforcing the laws of the State and instead runs afoul of the laws of the State and serves as a violation of the Constitution, based on the precedent before it, the Court finds that Defendant Roach, as the Collin County District Attorney, was acting as a policy maker on behalf of the County for purposes of the motion to dismiss.

### B.  Constitutionally Deficient Policy, Practice, or Custom

The County additionally asserts that Plaintiff has not asserted a policy of the County that caused Plaintiff's harm. Plaintiff disagrees. A plaintiff has to "specifically identif[y]" the contested policy. *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001). Further, if that "policy [is] based on a pattern," the plaintiff must demonstrate the pattern "'occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of . . . employees.'" *Davidson v. City of Stafford*, 848 F.3d 384, 396 (5th Cir. 2017) (quoting *Peterson v. City of Fort Worth*, 588 F.3d 838, 850 (5th Cir. 2009)). After reviewing the current complaint, the motion to

---

[12] The Northern District of Texas did identify the difference between the two allegations; however, the defendants in that case did not argue against the official policy; accordingly, that claim proceeded past the motion to dismiss without an argument against it. *Jones*, 2003 WL 21356818, at *2.

dismiss, the response, the reply, and the sur-reply, the Court finds that Plaintiff has stated a plausible claim that there was an official policy that caused her harm for the purposes of defeating a Rule 12(b)(6) motion to dismiss

## V.      Statute of Limitations

All Defendants argue that the majority of Plaintiff's claims do not require a favorable determination in order to proceed. Accordingly, the Defendants maintain the last possible accrual date, for a majority of her claims, is November 22, 2011, Plaintiff's conviction date. There is no debate that the case was filed on May 23, 2018. Thus, the Defendants argue that Plaintiff does not meet the two-year statute of limitations. Plaintiff counters that when the allegations are part of a broader malicious prosecution conspiracy, the causes of action accrue at the same time as the malicious prosecution. According to Plaintiff, malicious prosecution requires a favorable termination. As such, Plaintiff maintains all her causes of action are timely based on the date of accrual, May 24, 2017, the date her conviction was vacated and Plaintiff was acquitted.

The Court agrees with Plaintiff. All of Plaintiff's claims "are essentially part of a broader claim alleging a malicious prosecution conspiracy" and as such these claims "accrue[] at the same time as the cause of action for malicious prosecution." *Casanova v. City of Brookshire*, 119 F. Supp. 2d. 639, 650 (S.D. Tex. 2000); *accord Brandley v. Keeshan*, 64 F.3d 196, 199 (5th Cir. 1995), *Jacobs v. Port Neches Police Dep't*, No. 1:94-cv-767, 1996 WL 363023, at *5 (E.D. Tex. 1996). Moreover, malicious prosecution does require a favorable termination. *Brown*, 243 F.3d at 189. Plaintiff's 11.072 Writ of Habeas Corpus Declaring Actual Innocence as a Matter of Law was granted on May 24, 2017. This case was filed less than a year after that on May 23, 2018. Thus, Plaintiff's claims are timely.

## VI.    Punitive Damages

Both the CCDAO Defendants and the County argue that the Court should dismiss Plaintiff's claims for punitive damages against them. The Court addresses the arguments for each separately.

### A.  CCDAO Defendants

The CCDAO Defendants ask the Court to dismiss Plaintiff's claims for punitive damages asserting that a plaintiff has to establish a certain level of culpability against a government employee to receive punitive damages, noting it is harder to do when prosecutorial immunity is involved. The CCDAO Defendants state Plaintiff's punitive damage claim fails, without any argument or factual support. The Court does not find this issue to be fully briefed for the Court to consider. *See United States v. Volksen*, 766 F.2d 190, 193 (5th Cir. 1985); *Ragland v. Dall. Cty. Cmty. Coll. Dist.*, No. 3:16-CV-722-L, 2017 WL 1196863, at *5 (N.D. Tex. Mar. 31, 2017); *Kostic v. Tex. A & M Univ. at Commerce*, 11 F. Supp. 3d 699, 735 (N.D. Tex. 2014) (citing *Petrie v. City of Grapevine*, 904 F. Supp. 2d 569, 585 (N.D. Tex. 2012)).[13]

### B.  The County

The County also argues that Plaintiff cannot recover punitive damages against it, citing *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271, 101 S. Ct. 2748, 69 L.Ed.2d 616 (1981). Plaintiff does not respond to this argument. LOCAL RULE CV-7(d) ("A party's failure to oppose a motion in the manner prescribed herein creates a presumption that the party does not controvert the facts set out by movant and has no evidence to offer in opposition to the motion."). With no opposition to the argument, and the Supreme Court of the United States' holding that "a

---

[13] Even so, just looking to the complaint, Plaintiff has plausibly pleaded that the CCDAO Defendants acted willfully and intentionally.

municipality is immune from punitive damages under 42 U.S.C. § 1983" the Court finds the motion should be granted as to this issue. *Id.*

## CONCLUSION

It is therefore **ORDERED** that Defendants John Roach, Sr. and Christopher Milner's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. #17) is hereby **DENIED**. The motion is **DENIED** as to prosecutorial immunity, statute of limitations, and punitive damages. The remainder of the motion is **DENIED as moot** at this time. After the Plaintiff files her amended complaint, the CCDAO Defendants may reurge their motion with respect to the Plaintiff's constitutional claims and the defense of qualified immunity.

It is further **ORDERED** that Defendant Collin County, Texas' Motion to Dismiss Pursuant to Fed R. Civ. P. 12(b)(6) (Dkt. #18) is hereby **GRANTED in part and DENIED in part**. The motion is **GRANTED** as to punitive damages, and **DENIED** as to the argument Plaintiff did not plausibly plead a *Monell* liability claims and the statute of limitations defense. The remainder of the motion is **DENIED as moot** at this time. After the Plaintiff files her amended complaint, the County may reurge its motion with respect to Plaintiff's constitutional claims and its arguments based on the CCDAO Defendants' qualified immunity.

It is also **ORDERED** that Defendant's Abbott and White's Motion to Dismiss (Dkt. #20) is hereby **DENIED**. The motion is **DENIED** as to prosecutorial immunity, official immunity, and statute of limitations. The remainder of the motion is **DENIED as moot** at this time. After the Plaintiff files her amended complaint, the AG Defendants may reurge their motion with respect to the Plaintiff's constitutional claims and the defense of qualified immunity.

It is finally **ORDERED** that within fourteen days of this order, Plaintiff shall file an amended complaint in this case.

**SIGNED this 27th day of March, 2019.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE