# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| SUZANNE H. WOOTEN | § | |
| | § | |
| v. | § | Civil Action No.  4:18-CV-380 |
| | § | Judge Mazzant |
| JOHN ROACH, SR., CHRISTOPHER | § | |
| MILNER, COLLIN COUNTY, TEXAS, | § | |
| GREGORY ABBOTT and HARRY | § | |
| EUGENE WHITE | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Defendants John Roach, Sr. and Christopher Milner's ("CCDAO Defendants") First Amended Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. #59), Defendant Collin County, Texas' ("the County") First Amended Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. #60), and Defendants Abbott and White's ("AG Defendants") Motion to Dismiss Putative Second Amended Complaint (Dkt. #61).  Having considered the motions and the relevant pleadings, the Court finds that the CCDAO Defendants' and AG Defendants' motions (Dkt. #59; Dkt. #61) should be granted in part and denied in part and the County's motion (Dkt. #60) should be denied.

## BACKGROUND

As alleged by Plaintiff Suzanne H. Wooten, on March 4, 2008, Plaintiff defeated incumbent Judge Charles Sandoval in the Republican primary election for the 380th District Court Judge in Collin County, Texas by a landslide.  The next day, Judge Sandoval approached the Collin County District Attorney's Office (the "CCDAO") to complain about Plaintiff, asserting that she cheated during the election and he wanted the CCDAO to find a crime against her.  After this meeting, the

CCDAO[1] took it upon itself to investigate Plaintiff's campaign without the assistance of law enforcement. Eventually, the Office of the Attorney General[2] (the "OAG"), joined in the case against Plaintiff. The investigation lasted over two years before Plaintiff was initially indicted on October 14, 2010, with the final indictment filed on July 14, 2011.

The theory of the criminal investigation and prosecution against Plaintiff was that a married couple, David Frederick Cary and Stacy Stine Cary ("the Carys"), gave itemized monetary contributions to Plaintiff, through the Carys' consultant who also happened to be Plaintiff's media consultant, James Stephen Spencer ("Spencer"). The Carys and Spencer were Plaintiff's co-defendants in the criminal prosecution. Plaintiff and the Carys were all tried separately, and convicted by three different juries. Specifically, Plaintiff's jury found her guilty of six counts of bribery, one count of engaging in organized criminal activity, one count of money laundering, and one count of tampering with a governmental record. After these three trials, Spencer took a plea deal. The Carys appealed their convictions. The Dallas Court of Appeals affirmed Stacy Cary's conviction but several months later a different panel determined David Cary should be acquitted on all counts. Both cases were then appealed to the Texas Court of Criminal Appeals. On December 14, 2016, the Texas Court of Criminal Appeals determined that the Carys should be acquitted on all counts, as the allegations against the Carys were not actually a crime pursuant to the relevant statutes. *Stacy Cary v. State*, 507 S.W.3d 750 (2016); *David Cary v. State*, 507 S.W.3d 761 (2016).

---

[1] Defendant John Roach, Sr. ("Roach") was the elected Collin County District Attorney at this time. Defendant Cristopher Milner ("Milner") was an assistant district attorney in Collin County at this time and participated in the case against Plaintiff.

[2] Defendant Gregory Abbott ("Abbott") was the Attorney General for the State of Texas at this time. Defendant Harry Eugene White ("White") was an assistant attorney general at this time and participated in the case against Plaintiff.

Based on these holdings, on May 10, 2017, Plaintiff filed her First Amended Application for 11.072 Writ of Habeas Corpus Declaring Actual Innocence as a Matter of Law with the 366th Judicial District in Collin County, Texas. On May 24, 2017, the 366th Judicial District in Collin County granted the requested relief "finding the evidence presented legally insufficient because the allegations, even if true, were not crimes under Texas law." (Dkt. #3 at p. 1). The 366th Judicial District in Collin County further determined that because the evidence was legally insufficient to convict her of the nine felony charges, there had been a "violation of the Applicant's due process rights." (Dkt. #3 at p. 1).

Based on this set of facts, Plaintiff filed suit on May 23, 2018 (Dkt. #1). On May 29, 2018, Plaintiff amended her complaint (Dkt. #10) suing the CCDAO Defendants, the AG Defendants, and the County for violation of her due process rights, violation of the Fourth Amendment, conspiracy to deprive constitutional rights, and malicious prosecution, among other causes of action and theories of liability. On April 10, 2019, Plaintiff filed an amended complaint (Dkt. #42). On April 24, 2019, the CCDAO Defendants (Dkt. #59), the AG Defendants (Dkt. #61), and the County (Dkt. #60) filed their present motions to dismiss. Plaintiff responded to the CCDAO Defendants' (Dkt. #66), the AG Defendants' (Dkt. #65), and the County's (Dkt. #64) motions on May 8, 2019. The AG Defendants filed a reply in support of their motion on May 15, 2019 (Dkt. #73). The CCDAO Defendants (Dkt. #77) and the County filed replies on March 20, 2019 (Dkt. #78). On May 22, 2019, Plaintiff filed a sur-reply to the AG Defendants' motion (Dkt. #79). Finally, on May 31, 2019, Plaintiff filed sur-replies to the CCDAO Defendants' motion (Dkt. #80) and the County's motion (Dkt. #81).

## LEGAL STANDARD

The Federal Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in the plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then determine whether the complaint states a claim for relief that is plausible on its face. "A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "But where the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556

U.S. at 664.  Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief."  *Id.*  "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'"  *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (citation omitted).  This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.

Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

**ANALYSIS**

In response to Plaintiff's Second Amended Complaint, the CCDAO Defendants, the AG Defendants, and the County each filed motions to dismiss.  However, prior to addressing these motions, the Court needs to address its jurisdiction to accept the new factual allegations added to Plaintiff's complaint and to decide the motions to dismiss filed in this case.

## I.       Court's Jurisdiction Over the Matters not on Appeal

On March 27, 2019, the Court issued its Order on Defendants' Initial Motions to Dismiss (Dkt. #39) ("Court's Initial Order").  Defendants initially moved to dismiss Plaintiff's claims based on absolute prosecutorial immunity, qualified immunity, official immunity under state law, failure to state a claim under a *Monell* theory, statute of limitations, and failure to state a claim as to punitive damages.  In summary, the Court decided that: (1) the CCDAO Defendants, at this stage in the litigation, are not entitled to prosecutorial immunity; (2) some of the AG Defendants' actions are covered by prosecutorial immunity and some are not; (3) the AG Defendants are not entitled to official immunity; (4) Plaintiff plausibly stated a valid claim using a *Monell* theory against the

5

County; (5) Plaintiff plausibly pleaded a timely claim; (6) there is no plausible claim for punitive damages against the County; and (7) there is a plausible claim of punitive damages against the CCDAO Defendants. However, the Court did not decide the issue of qualified immunity. The Court stated that "[d]ue to the nature of qualified immunity, the Court finds allowing the Plaintiff to replead will assist the Court in deciding qualified immunity." (Dkt. #39 at p. 14). The Court further explained in a footnote:

> For example, in her complaint: (1) Plaintiff does not mention her probation, which is a basis for a deprivation of liberty in her procedural due process claim; (2) lacks factual details surrounding her arrest, which is the basis for her false arrest claim; (3) could contain more specifics surrounding her supervisory liability and failure to intervene claims; and (4) could be more specific as to her due process claim—whether she seeks only procedural or also substantive due process and what property and liberty interests are alleged, although some of this information is contained in the briefing, it could be more clearly identified in the complaint. The Court does not hold that any of the areas are insufficient or that there are no other areas that could be clarified, but merely provides some examples of where some additional clarity could be helpful to the Court.

(Dkt. #39 at p. 14 n.7). Finally, in the conclusion of the Order, the Court denied as moot the portions of the initial motions to dismiss involving the defense of qualified immunity, ordered Plaintiff to file an amended complaint[3] within fourteen days of the order and allowed the Defendants to reurge their motions to dismiss, narrowing the issues to be discussed in the reurged motions to Plaintiff's constitutional claims and the defense of qualified immunity. (Dkt. #39 at p. 22).

On April 9, 2019, the CCDAO Defendants and the AG Defendants filed a notice of interlocutory appeal,[4] appealing the Court's ruling denying the motions to dismiss on prosecutorial immunity grounds. The next day, on April 10, 2019, Plaintiff filed an amended complaint to clarify

---

[3] Although not explicit in the conclusion, the Court's Initial Order was clear that the amendment would pertain to the defense of qualified immunity. *See* (Dkt. #39 at p. 14).

[4] The County also initially filed a notice of appeal.

the qualified immunity issue. Thereafter, on April 17, 2019, the County, the AG Defendants, and the CCDAO Defendants (collectively, "Defendants") filed their Joint Advisory Regarding Interlocutory Appeal (Dkt. #43). On April 18, 2019, Plaintiff filed a response to the notice (Dkt. #44). On April 19, 2019, the AG Defendants filed a reply to the notice (Dkt. #46) as did the CCDAO Defendants and the County[5] (Dkt. #49). Finally, on April 22, 2019, Plaintiff filed a sur-reply to the AG Defendants (Dkt. #52) and the CCDAO Defendants and the County (Dkt. #53).

In their Joint Advisory, Defendants assert that the filing of their interlocutory appeals "immediately divested this Court of jurisdiction to proceed against Defendants." (Dkt. #43 at p. 2) (citations omitted). Defendants maintain that because the Court was divested of jurisdiction based on the appeal, it has no authority to accept Plaintiff's amended complaint. (Dkt. #43 at p. 2) (citations omitted). Defendants then request "the Court [to] issue an order making clear that it lacks jurisdiction while this matter is pending on appeal" or "[i]f the Court believes that it retains jurisdiction, Defendants respectfully request an order stating the Court's understanding." (Dkt. #43 at p. 2). Plaintiff counters that the Court is only divested of jurisdiction regarding the matters on appeal and is permitted to proceed on matters not on appeal. According to Plaintiff, qualified immunity is a matter that is not on appeal. With these arguments presented, the Court turns to the law on the issue.

> [A] federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously[. Thus, t]he filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal.

---

[5] Plaintiff spends a portion of her response to the joint advisory arguing that the County's appeal is frivolous and so the Court is not divested of jurisdiction as to the County. Subsequently, the County voluntarily withdrew its notice of appeal (Dkt. #47) and requested a stay of the proceedings as to the County (Dkt. #48). In the reply, the County makes note of these two occurrences to the Court. (Dkt. #49).

*Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) (citations omitted). The Fifth Circuit further explains that "[a] notice of appeal from an interlocutory order does not produce a complete divesture of the district court's jurisdiction over the case; rather, it only divests the district court of jurisdiction over those aspects of the case on appeal." *Alice L. v. Dusek*, 492 F.3d 563, 564 (5th Cir. 2007). "[W]here an appeal is allowed from an interlocutory order, the district court may still proceed with matters not involved in the appeal." *Id.* at 564–65 (quoting *Taylor v. Sterret*, 640 F.2d 663, 667–68 (5th Cir. 1981)). "How broadly a court defines the aspects of the case on appeal depends on the nature of the appeal." *Id.* at 565.

Here, the nature of the appeal in this case, based on the unique procedural history of this case, is whether absolute prosecutorial immunity applies to Plaintiff's claims against the CCDAO Defendants and the AG Defendants. What remains—that is, what has not already been decided by the Court and is not before the Fifth Circuit—is whether qualified immunity applies to Plaintiff's constitutional claims against the CCDAO Defendants and AG Defendants. While qualified immunity and prosecutorial immunity apply to the same causes of action, the analysis of the separate arguments, legal principles, and facts surrounding the defenses are different. There is no possibility that the Court, in deciding the motions to dismiss currently pending, will decide an issue or an aspect that the Fifth Circuit will decide in the current appeal.[6]

Even so, Defendants argue that the Court does not have jurisdiction to accept the amended complaint, citing *May v. Sheehan*, 226 F.3d 876 (7th Cir. 2000). Although not binding precedent in the Fifth Circuit, the Seventh Circuit in *May* held that after the plaintiff filed an interlocutory appeal regarding a district court's grant[7] of a motion to dismiss on qualified immunity grounds,

---

[6] In issuing the Court's Initial Order, the Court anticipated that the parties, if deemed necessary, would appeal this order as well and the Fifth Circuit might decide the appeals together.

[7] Although qualified immunity was granted for the American with Disabilities Act claim, the appeal is interlocutory because the motion to dismiss was denied regarding all other claims.

the district court lacked jurisdiction to accept an amended complaint from the plaintiff. *Id.* at 879. The Seventh Circuit explained that an amended complaint supersedes the previous complaint. *Id.* Thus, if the district court were permitted to accept an amended complaint, the original complaint would be superseded and the motion to dismiss filed in response to that initial complaint would be rendered moot. *Id.* Because the, now moot, motion to dismiss was the motion on appeal, the appeal would also be rendered moot. *Id.* As such, because the district court accepting an amended complaint would affect the appeal, the district court does not have authority to accept the amended complaint, according to the Seventh Circuit. *Id.*

The Court finds it unnecessary to decide whether, in the Fifth Circuit, the Court can accept an amended complaint while a matter is on appeal based on a motion to dismiss a complaint. In this case, although the Court stated that Plaintiff was permitted to file an amended complaint, it is clear from the nature of the Court's Initial Order that the Court intended Plaintiff to supplement her complaint with additional allegations regarding her constitutional claims solely for purposes of analyzing qualified immunity at this stage.[8] Accordingly, the Court finds that Plaintiff's Second Amended Complaint is in fact a supplement to her First Amended Complaint and does not supersede the First Amended Complaint. Thus, there is no issue regarding whether the complaint that was the basis of the Court's Initial Order is still the live complaint, and there is no mootness issue with the appeal currently pending. As such, the Court has jurisdiction to proceed at this time.

## II.    Motions to Dismiss

Because the Court has jurisdiction to accept the supplement to the complaint, the Court has jurisdiction to consider the renewed motions to dismiss filed by the CCDAO Defendants, the AG

---

[8] As the Court only invited Plaintiff to make new or supplemental allegations as it pertains to the defense of qualified immunity, if there are any other allegations added, the Court does not consider those at this time. Plaintiff is not prohibited from filing a motion for leave to amend if the case resumes after the appeal at the Fifth Circuit concludes.

Defendants, and the County. The Court notes that Defendants filed their motions to dismiss based on a wide variety of defenses and issues, some of which have been previously ruled on and/or are currently on appeal. The CCDAO Defendants move to dismiss Plaintiff's claims asserted against them based on: (1) failure to state personal involvement of District Attorney Roach; (2) absolute prosecutorial immunity; (3) qualified immunity; (4) official immunity; (5) statute of limitations; (6) failure to plead a cognizable constitutional violation, including the Due Process Clause, false arrest, malicious prosecution, and conspiracy; and (7) failure to demonstrate "ultra vires" actions. The AG Defendants move to dismiss on (1) absolute immunity; (2) qualified immunity; (3) official immunity; (4) statute of limitations; and (5) failure to state a claim. The County moves to dismiss Plaintiff's complaint arguing (1) Plaintiff has not stated a proper *Monell* theory of liability, not presenting a policy maker or an official policy; (2) Plaintiff's claims are barred by statute of limitations; (3) Collin County is immune based on the CCDAO Defendants' immunity; and (4) Plaintiff failed to state a plausible claim The Court has already addressed absolute prosecutorial immunity as to the CCDAO Defendants and the AG Defendants, a *Monell* theory of liability[9] as to the County,[10] statute of limitations, and official immunity as to the AG Defendants. Moreover,

---

[9] In arguing that Roach could not possibly serve as a policy maker for the County, the County again raises an argument regarding Eleventh Amendment immunity, asserting that because Roach would be entitled to Eleventh Amendment Immunity, if he had been sued in that capacity, that means he is a state actor and could not also serve as a policy maker for the County. The Court previously analyzed why Roach, in this case, was acting as a policy maker for the County. In so doing, the Court explained it would not engage in a hypothetical analysis on what would happen if Roach was sued in his official capacity, which Plaintiff admits he is not. The Court echoes the sentiment that it will not engage in an analysis of whether or not Roach would be entitled to Eleventh Amendment immunity, as he was not sued in that capacity. Moreover, the Court notes that the County explicitly states that the District Attorney would be considered a "state official[], not a local official[], for purposes of liability arising out of their prosecutorial decisions and are thus entitled to Eleventh Amendment Immunity." (Dkt. #60 at p. 16). However, as the Court previously decided, Plaintiff sufficiently pleaded that the CCDAO Defendants were not making prosecutorial decisions, but instead investigative decisions.

[10] The AG Defendants argue that this count has no merit as it related to White or Abbott. Plaintiff maintains that it has not raised a *Monell* theory against Abbott and White. Thus, the Court need not address these issues.

the Court's decision regarding absolute prosecutorial immunity is currently on appeal. The Court does not address these arguments again but turns to the questions that remain unanswered.[11]

### A. Personal Involvement, Supervisory Liability, and Failure to Intervene

The CCDAO Defendants argue that Plaintiff did not allege Roach was personally involved in the investigation, indictment, and ultimate conviction of Plaintiff. Accordingly, the CCDAO Defendants maintain that Plaintiff cannot sustain a § 1983 claim against Roach. Additionally, the AG Defendants allege that Plaintiff has not stated a plausible claim for supervisory liability or failure to intervene against Abbott. Plaintiff counters that Roach and Abbott were personally involved in the violation of her civil rights and her complaint contains allegations of such involvement. Plaintiff also pleads a cause of action for supervisory liability and failure to intervene.

"As a prerequisite [to § 1983 liability], a plaintiff must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged." *Roberts v. City of Shreveport*, 397 F.3d 287, 292 (5th Cir. 2005) (quoting *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995)); *see also Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause

---

[11] The AG Defendants maintain that they re-urge some of the arguments for four reasons: (1) they did not want to waive their immunity rights; (2) the new allegations in the complaint may affect the Court's absolute immunity analysis; (3) the Second Amended Complaint would make the First Amended Complaint, and the Court's order on such complaint, moot; and (4) the Court "appears to allow Defendants to re-urge their absolute immunity arguments, as the Court has invited Defendants to 're[-]urge their motion with respect to the Plaintiff's constitutional claims[.]'" (Dkt. #61 at p. 15) (quoting Dkt. #39 at p. 22). The County and the CCDAO Defendants additionally assert that they are raising these issues again to ensure that the arguments are not waived. The Court respects the Defendants' desire to preserve their immunity argument; however, as previously explained, the Court considers the Second Amended Complaint to simply be a supplement regarding the qualified immunity issues, not a new operative complaint. Because it is a supplement for a specific purpose, the Court's Initial Order and the First Amended Complaint are not moot and any additional allegations in Plaintiff's complaint do not change the Court's analysis on prosecutorial immunity. Finally, the Court did not invite Defendants to re-urge their prosecutorial immunity arguments; the AG Defendants selectively quoted the Court's initial order. The Court did not simply say Defendants could re[-]urge their motion as to the constitutional claims, but instead, stated Defendants could "re[-]urge their motion with respect to Plaintiff's constitutional claims *and* the defense of qualified immunity." (Dkt. #39 at p. 22) (emphasis added).

of action."); *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983) (same). When alleging a § 1983 claim, a plaintiff may not establish liability against a government entity through *respondeat superior*. *Deville v. Marcantel*, 567 F.3d 156, 170 (5th Cir. 2009) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)); *Wright v. Denison Indep. Sch. Dist.*, No. 4:16-cv-615, 2017 WL 2262778, at *3 (E.D. Tex. May 24, 2017), *memorandum adopting in part*, No. 4:16-cv-615, Dkt. #36 (E.D. Tex. Apr. 19, 2017).

"However, a supervisor may be held liable if there exists either (1) his personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) (citing *Harvey v. Andrist*, 754 F.2d 569, 572 (5th Cir 1985)). "A supervisory official is held to a standard of 'deliberate indifference,' which requires proof that the supervisor 'disregarded a known or obvious consequence of his actions.'" *Evett v. DETNTFF*, 330 F.3d 681, 689 (5th Cir. 2003) (quoting *Southard v. Tex. Bd. of Criminal Justice*, 114 F.3d 539, 551 (5th Cir. 1997)); *accord Thompkins*, 828 F.2d at 304 (explaining that there needs to be a finding of knowledge, personal indifference, or personal implementation of a system).

Additionally, "there are limited circumstances in which an allegation of a 'failure to train' [or failure to supervise] can be the basis for liability under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 387 (1989). To succeed on a failure to train or supervise claim, Plaintiff must be able to show: (1) the training procedures or supervision of employees was inadequate; (2) a causal link between such failure and the violation of Plaintiff's constitutional rights; and (3) such failure amounts to deliberate indifference. *Martinez v. Foster*, No. 4:13-cv-59, 2017 WL 9286990, at *6 (E.D. Tex. Mar. 3, 2017), *report and recommendation adopted by*, 2017 WL 1251105 (E.D. Tex. Mar. 31, 2017) (citing *Brown v. Callahan*, 623 F.3d 249, 254 (5th Cir. 2010); *Gast v. Singleton*,

402 F. Supp. 2d 794, 798–99 (S.D. Tex. 2005)). "To act with deliberate indifference, a state actor must 'know [] of and disregard[] an excessive risk to [the victim's] health or safety." *McClendon v. City of Columbia*, 305 F.3d 314, 326 n.8 (5th Cir. 2002) (alterations in original) (quoting *Ewolski v. City of Brunswick*, 287 F.3d 492, 513 (6th Cir. 2002)).

The Fifth Circuit has also found limited circumstances, generally in excessive force cases, where an officer can be liable for bystander liability, which is what Plaintiff has labeled a failure to intervene. Under a theory of bystander liability, an officer can be liable when the officer: "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013) (quotations and citations omitted). What Plaintiff has failed to mention is that, "liability will not attach where an officer is not present at the scene of the constitutional violation." *Id.* "[T]he Court should also consider whether an officer 'acquiesce[d] in' the alleged constitutional violation." *Coleman v. Fox*, No. 1:14-cv-672, 2018 WL 2771563, at *19 (E.D. Tex. Feb. 27, 2018) (second alteration in original) (quoting *Whitley*, 726 F.3d at 647). The primary focus for bystander liability is whether the bystander officer has "a reasonable opportunity to realize the excessive nature of the force and to intervene to stop it." *Id.* (quoting *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995)).[12]

---

[12] Plaintiff also asserts claims for failure to intervene and supervisory liability against Milner and White. For the supervisory liability claim, the basis of the claim was that Milner or White did not properly supervise those under their control in the investigation of Plaintiff. However, Plaintiff has not plausibly stated that Milner or White were supervisors or how the supervision was inadequate. Further, the basis for the failure to intervene claim for White is that he did not intervene to stop the CCDAO from pursuing the alleged wrongful investigation of Plaintiff and the basis against Milner remains unclear. A failure to intervene, or bystander liability, claim is based on the premise that an officer stood by and allowed another officer to commit a constitutional violation without participating. *See, e.g.*, *Hale*, 45 F.3d at 919 (holding that allegations of an officer standing by while laughing and shouting encouragement watching another officer use excessive force on a citizen was sufficient to survive summary judgment on a claim of bystander liability). In this case, Plaintiff alleges that both Milner and White were involved in the alleged constitutional deprivation, not that either defendant stood by while someone else deprived Plaintiff's constitutional rights.

Using these legal principles, the Court will address the allegations against Defendant Roach and Abbott in turn.

### 1. Roach

The CCDAO Defendants argue that Plaintiff did not allege that Roach was personally involved in the investigation, indictment, and ultimate conviction of Plaintiff. The CCDAO Defendants argue that Plaintiff has not stated a plausible claim for supervisory liability regarding Roach.[13] Plaintiff alleges that Defendants engaged in a politically motivated investigation, prosecution, indictment, and ultimate conviction. Plaintiff further asserts that Roach was the driving force behind politically motivated investigations in the CCDAO, and specifically, the politically motivated investigation of Plaintiff. Plaintiff maintains that Roach was even investigated by the Federal Bureau of Investigation for using the grand jury to further these politically motivated investigations.

While Roach may have not conducted the investigation himself or proceeded in front of the grand jury, he is alleged to be the motivating factor behind inappropriate, politically-based investigations, which is an essential element of Plaintiff's claims for constitutional depravations. As the motivating factor, Roach would be personally aware of the alleged misconduct and be implementing the system promoting the alleged misconduct. *See Thompkins*, 828 F.2d at 305. Furthering and promoting a policy to pursue investigations based on politics in fact demonstrates an excessive risk to the victim's constitutional privileges. Thus, Roach plausibly acted with deliberate indifference when disregarding this known and obvious risk. At this stage, the Court finds the allegations suggest a plausible causal connection between Roach's conduct and the

---

[13] The CCDAO Defendants alternatively argue that if Plaintiff is attempting to assert supervisory liability over White, that because the Court found White was absolutely immune, Roach would also be immune. However, the Court does not find that Plaintiff is asserting a supervisory liability claim based on White.

alleged constitutional deprivations that is sufficient.[14]  Thus, even as a supervisor not directly involved in the actions resulting in a constitutional deprivation, Plaintiff has stated a plausible claim under this basis.  *See id.*

### 2. Abbott

The AG Defendants allege that Plaintiff has not stated a plausible claim for supervisory liability or failure to intervene against Abbott.  The AG Defendants contend that the allegations under this count are nonspecific and conclusory.  The AG Defendants assert that there are no facts to support the claim.  Plaintiff disagrees.  Plaintiff maintains that White is liable because he acted, or failed to act, with deliberate indifference.  Plaintiff alleges that Abbott was the Attorney General at the time of the alleged constitutional violations in this case.  As the Attorney General, Abbott was White's superior and, thus, supervised White.  Abbott assigned White to assist and later assume the investigation and prosecution of Plaintiff.  Plaintiff maintains that Abbott failed to supervise White and failed to intervene to stop White from pursuing an illegal investigation and prosecution.  The Court address both Plaintiff's failure to supervise and failure to train claims in turn.

As to a claim for failure to supervise, Plaintiff failed to identify the supervision that was inadequate or any explanation as to what supervision Abbott should have been taking, but was not, except for conclusorily stating that Abbott should have supervised White and prevented him from pursuing a wrongful prosecution and investigation.  Moreover, there are no factual allegations to support the fact that Abbott knew of the violation, therefore, any failure to supervise could not equate to deliberate indifference.  *See McClendon*, 305 F.3d at 326 n.8.  Finally, Plaintiff argued

---

[14] While Plaintiff has asserted a claim for failure to intervene against Roach, the CCDAO Defendants do not argue that the failure to intervene claim is insufficient and instead focus on supervisory liability.  Thus, the Court does not address the claim.

that her "supervisory liability claims are not based on vicarious liability, a failure to train, or *even a failure to supervise*." (Dkt. #65 at p. 22) (emphasis added). Thus, even if the Court accepted the conclusory statements that Abbott did not supervise, Plaintiff's own language contradicts this theory of supervisory liability.

It appears from Plaintiff's complaint and briefing that Plaintiff's supervisory liability claim has much of its basis in her "failure to intervene" claim, which is actually called bystander liability. However, Plaintiff has failed to plead just that, that Abbott was in fact a bystander present and witnessing the constitutional violations. *Whitley*, 726 F.3d at 646. Thus, the Court finds that Plaintiff has not pleaded a plausible supervisory liability claim or failure to intervene claim against Defendant Abbott. Beyond these causes of action, the Court does not find any personal involvement by Abbott in the allegations in this case. Accordingly, the Court finds that Plaintiff has not stated a plausible claim against Defendant Abbott.

### 3. The County

The County argues that "[t]o the extent that Plaintiff tries to impute liability onto Collin County for acts of District Attorney Roach, District Attorney Milner, or even others she cannot do so." (Dkt. #60 at p. 18). Plaintiff responds that she is not seeking to "hold Collin County vicariously liable, but rather liable for its own unconstitutional policies established by its policy maker, District Attorney Roach." (Dkt. #64 at p. 16). The Court agrees with Plaintiff that she is not attempting to hold the County vicariously liable; thus, there is no claim or argument to dismiss on that ground.

### B. Qualified Immunity

Public officials are immune from suit under 42 U.S.C. § 1983 unless they have "violated a statutory or constitutional right that was clearly established at the time of the challenged conduct."

*Plumhoff v. Rickard*, 572 U.S. 765, 778 (2014). Qualified immunity is a two-prong inquiry upon which the Court, in its discretion, may resolve either prong first in light of the circumstances of the particular case at hand. *Pearson v. Callahan*, 555 U.S. 223, 236–37 (2009). The two prongs are: (1) a statutory or constitutional right was violated on the facts alleged, and (2) the defendant's actions violated clearly established statutory or constitutional rights, which a reasonable person would have known. *Griggs v. Brewer*, 841 F.3d 308, 312 (5th Cir. 2016) (citing *Flores v. City of Palacios*, 381 F.3d 391, 395 (5th Cir. 2004)). "Qualified immunity 'gives government officials breathing room to make reasonable but mistaken judgments,' and 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)).

The Court will address both prongs in its analysis. However, before turning to the prongs, the Court first addresses an argument from the CCDAO Defendants that they cannot be liable because they were involved early in the case and not at the time of the indictment or conviction. The Court addresses this argument first because it permeates the two prongs of the analysis. The Court addresses this argument in one location and the analysis equally applies throughout the prongs. Subsequently, the Court turns to the qualified immunity prongs.

### 1. The CCDAO Defendants' and the County's Alleged Early Involvement

The CCDAO Defendants and the County argue that they cannot be liable for any constitutional deprivation that took place after July 22, 2010, when the Attorney *Pro Tem* took over the case. According to the County and CCDAO Defendants, the CCDAO Defendants did not obtain the indictment, arrest, or conviction themselves; therefore, they cannot be responsible for any purported constitutional violation associated with these occurrences—i.e., her Fourth Amendment claim and due process claims. Plaintiff responds that the CCDAO Defendants were

still involved with the investigation at the time of the indictment, arrest, and conviction. Moreover, Plaintiff argues that the CCDAO Defendants cannot avoid liability or responsibility for consequences of the events that they set in motion.

Accepting as true Plaintiff's factual allegations, which the Court must do, after the Attorney *Pro Tem* took over the case, the CCDAO remained on the case to "render such non-prosecutorial support, investigative aid and other assistance as the Attorney *Pro Tem* deems proper." (Dkt. #10 ¶ 29) (emphasis added).[15] As such, it is plausible that the CCDAO Defendants were still involved in the investigation of Plaintiff through her conviction.

However, even if the CCDAO Defendants cannot be said to have had personal involvement in the indictment, arrest, or conviction, as they were no longer prosecutors on the case, they cannot escape liability for their alleged wrongful conduct based on somebody else taking over a prosecution. In holding that malicious prosecution can result in a constitutional violation, the Fifth Circuit explained that:

> [t]he initiation of criminal charges without probable cause may set in force events that run afoul of explicit constitutional protection[s]—the Fourth Amendment if the accused is seized and arrested, for example, or other constitutionally secured rights if a case is further pursued. Such claims of lost constitutional rights are for violation of rights locatable in constitutional text, and some such claims may be made under 42 U.S.C §1983.

*Castellano v. Fragozo*, 352 F.3d 939, 953–54 (5th Cir. 2003). Although explaining malicious prosecution jurisprudence within the Fifth Circuit, the Court finds that this principle equally applies to the current set of facts. The CCDAO Defendants are alleged to have initiated criminal charges without probable cause, setting in force events that resulted in constitutional violations.

---

[15] Because the Court only considers the supplemental allegations in the document titled Plaintiff's Second Amended Complaint, the Court cites to the First Amended Complaint when possible.

Thus, the CCDAO Defendants can be considered liable for the resulting constitutional deprivations that Plaintiff plausibly pleads.

The CCDAO Defendants additionally argue that regardless of their personal involvement in the action, the Court found that the AG Defendants are immune based on prosecutorial immunity for obtaining the indictment and the ultimate conviction. As an initial matter, this is not a claim for supervisory liability, in which the Supreme Court of the United States has warned that a supervisor should not be liable for conduct that its subordinates are immune from. *Van de Kamp v. Goldstein*, 555 U.S. 335, 345–49 (2009). Instead, Plaintiff is attempting to hold the CCDAO Defendants liable for their own personal conduct, which resulted in alleged constitutional violations.

Moreover, the Court notes that the Fifth Circuit in *Castellano* was concerned with whether "[t]he initiation of criminal charges without probable cause may set in force events that run afoul of explicit constitutional protection[s]." *Castellano*, 352 F.3d at 953–54. Indeed, as the Court will find is plausibly alleged here, the CCDAO's initiation of criminal charges without probable cause *did* run afoul of her constitutional protections, regardless of whether or not the AG Defendants are immune from liability for certain conduct surrounding the indictment, arrest, and conviction. The Court finds no requirement in the law providing that the unreasonable conduct and the constitutional violation happen simultaneously. Thus, any immunity the Court found for the AG Defendants' conduct does not affect the liability of the CCDAO Defendants.[16]

The analysis in this section makes practical sense and is supported by public policy. Here, Roach was the one to request recusal and appointment of the Attorney *Pro Tem*. According to

---

[16] Although not an argument in the briefing for the AG Defendants, the Court finds that the reasoning in this section applies equally to Defendant White in that his conduct that was not found to be absolutely immune was part of the events that set in motion the eventual constitutional violation.

Plaintiff's allegations, Roach was the motivating force behind politically-motivated investigations. As the Court will find, a reasonable official in the same position would have known that these actions were inappropriate and would result in a constitutional violation. Any other holding under this section would only encourage an officer, like Roach, who is allegedly knowingly setting in motion a constitutional violation to request another officer to come finish the violation and completely escape liability, even when their actions directly result in a constitutional violation, achieving their initial goal. The Court does not find that the CCDAO Defendants can set in motion constitutional violations and then avoid the responsibility and consequences of their own actions.

Accordingly, the Court does not find that the CCDAO Defendants' early involvement insulates them from liability in this case. This analysis applies throughout all alleged constitutional violations.

### 2. A Statutory or Constitutional Right Was Violated on the Facts Alleged

When considering the first prong, the Court looks to each count asserted by Plaintiff. Plaintiff pleads the following constitutional deprivations under § 1983: Violation of Procedural Due Process Rights; Violation of Fourth Amendment; Conspiracy to Deprive Constitutional Rights; Malicious Prosecution; and Violation of Substantive Due Process. The Defendants assert that Plaintiff has not plausibly asserted a valid constitutional violation. Plaintiff disagrees. The Court will address each count in turn.

### a. Malicious Prosecution

The CCDAO Defendants and the AG Defendants argue that the Court should dismiss Plaintiff's cause of action for malicious prosecution because it is not an independent constitutional violation. Plaintiff acknowledges that there is "no express right in the Constitution protecting

against malicious prosecution, there are rights under the Fourth, Fifth, and Fourteenth Amendments forming the basis of the malicious prosecution claims." (Dkt. #66 at p. 27).[17]

The Court agrees. There is "no such freestanding constitutional right to be free from malicious prosecution" in the Fifth Circuit. *Castellano*, 352 F.3d at 945. As such, the motion should be granted regarding Plaintiff's claim for malicious prosecution, and that count should be dismissed with prejudice from Plaintiff's complaint. However, because malicious prosecution "may set in force events that run afoul of explicit constitutional protection[s]," the Court considers the allegations made under the malicious prosecution cause of action when analyzing the alleged constitutional deprivations asserted by Plaintiff. *Id.* at 953.

### b. Fourth Amendment

Plaintiff pleads a violation of her Fourth Amendment right to be free from unreasonable search and seizure, including unlawful detention and arrest. Under the Fourth Amendment, Plaintiff asserts that "Defendants arrested, seized, and detained Plaintiff without probable cause." (Dkt. #42 ¶ 97). According to Plaintiff, after hearing news of the indictment against her, Plaintiff surrendered at the Grayson County jail to avoid a public arrest in front of the media and being placed in a jail where Plaintiff had sentenced defendants. (Dkt. #42 ¶ 21, 97). Plaintiff alleges that she was processed, which included being thoroughly frisked, fingerprinted, and getting her mugshot taken, and then she was released on a personal recognizance bond. (Dkt. #42 ¶ 21, 97).

"The Fourth and Fourteenth Amendments guard against arrest without probable cause." *Hand v. Gary*, 838 F.2d 1420, 1427 (5th Cir. 1988). "To prevail on [a] Fourth Amendment false

---

[17] Similar to malicious prosecution, the AG Defendants contend that abuse of process, without more, cannot rise to a constitutional violation. Plaintiff acknowledges that the abuse of process allegations are similar to malicious prosecution, in regards to a §1983 claim. The Court agrees. *See Whatley v. Philo*, 817 F.2d 19, 22 (5th Cir. 1987) (quoting *Becker Phosphate Co. v. Muirhead*, 581 F.2d 1187, 1188 (5th Cir. 1978)) (holding that "misuse of legal procedure, without more, does not rise to the level of a constitutional wrong remedied by §1983."). However, Plaintiff's complaint does not appear to assert abuse of process as a § 1983 claim. Thus, to the extent Plaintiff does assert a § 1983 abuse of process claim, the analysis in this section equally applies to such allegation.

arrest claim, [a plaintiff] must sufficiently allege (1) that he was arrested, and (2) the arrest did not have the requisite probable cause." *Rhodes v. Prince*, 360 F. App'x 555, 558 (5th Cir. 2010). (citing *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655–56 (5th Cir. 2004)). In order to show an arrest in violation of the Fourth Amendment, a plaintiff must show that she has been seized. "[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Id.* (internal quotations omitted) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)). As to the probable cause element,

> "[t]he Supreme Court has defined probable cause as the facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." The facts must be known to the officer at the time of the arrest; post-hoc justifications based on facts later learned cannot support an earlier arrest. The facts must be particularized to the arrestee. We apply an objective standard, which means that we will find that probable cause existed if the officer was aware of facts justifying a reasonable belief that an offense was being committed, whether or not the officer charged the arrestee with that specific offense."

*Club Retro*, *L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009) (citations omitted) (quotations omitted).

The CCDAO Defendants, the AG Defendants, and the County do not argue that Plaintiff was not arrested in accordance with the terms of the Fourth Amendment; however, they do challenge the probable cause element. According to the Defendants, the "independent intermediary" doctrine negates the causal connection for Plaintiff's false arrest claim.[18] Plaintiff

---

[18] The AG Defendants additionally argued that they are not mentioned by name in this count. However, the AG Defendants have not provided any argument or supporting case law that stands for the proposition that Plaintiff has to specifically name each defendant, especially considering the fact that this count states that "all of the Defendants" violated her Fourth Amendment rights under this count. (Dkt. #10 ¶ 87). The AG Defendants make this argument throughout the various causes of action. The Court is equally unpersuaded regarding the other causes of action.

claims that the doctrine does not apply in this case to break the causal chain because the Grand

Jury indictment was based upon false allegations of a nonexistent crime.

The Fifth Circuit explaining the independent intermediary doctrine stated,

> "even an officer who acted with malice in procuring the warrant or the indictment
> will not be liable if *the facts* supporting the warrant or indictment are put before an
> impartial intermediary such as a magistrate or a grand jury, for that intermediary's
> independent decision breaks the causal chain and insulates the initiating party."

*Hand*, 838 F.2d at 1427 (quoting *Smith v. Gonzales*, 670 F.2d 522, 536 (5th Cir. 1982)). However,

> the chain of causation [can be] broken only where all the facts are presented to the
> grand jury, where the malicious motive of the law enforcement officials does not
> lead them to withhold any relevant information or other independent intermediary
> from the independent intermediary. Any misdirection of the magistrate or the grand
> jury by omission or commission perpetuates the taint of the original official
> behavior.

*Id.* at 1427–28.

According to Plaintiff's complaint, (1) "Plaintiff did not engage in the conduct alleged by

Defendants"; (2) Defendants knew "she committed no criminal act"; (3) "Defendants intentionally

misrepresented the law and facts and secured a wrongful conviction of Plaintiff"; (4) Plaintiff was

"actually innocent and that there was no evidence of any wrongdoing"; (5) the CCDAO

Defendants and AG Defendants knew "there was no probable cause and that a crime had not been

committed"; (6) the problem with the theory of prosecution was that "even if true, these actions

would not be illegal – and the CCDAO and OAG knew that these alleged actions would not be

illegal when they moved forward with the prosecution"; (7) "Defendant Milner asked Spencer to

sign a blank confession. Defendant Milner explained that he would tell Spencer what he was going

to say in the confession after Spencer signed it. Spencer declined to sign the blank confession";

(8) "CCDAO Investigator Steve Goodman passed on information that evidence pertaining to the

Judge Wooten and Greg Willis investigations was being destroyed within the CCDAO," although

eventually claiming he had no knowledge of the destruction; and (9) "the Defendants conducted a malicious criminal investigation, knowingly arresting Plaintiff without probable cause and pursued a criminal prosecution of Plaintiff for alleged conduct that was not criminal and based upon 'facts' they knew were untrue." *See generally* (Dkt. #10; Dkt. #42).

Because the Court must take the allegations as true, the Court finds it plausible that the facts and law presented to the judges, grand jury, and jury in this case by Milner and White were not complete, either by omission or commission. There are allegations of evidence destruction and pressuring witnesses. This is all at a stage without any discovery. The Court finds it plausible, based on the current allegations, that the chain of causation was not broken based on the presentation of evidence to the grand jury that was alleged to be tampered with or destroyed.[19]

### c. Violation of Due Process Rights

Plaintiff alleges a cause of action for both procedural and substantive due process. According to Plaintiff, she was "deprived of a life, liberty[,] or property interest without the process that was due" and "in an arbitrary and capricious manner." (Dkt. #42 ¶¶ 84, 138).

The Fifth Amendment to the United States Constitution provides that "No person shall . . . be deprived of life, liberty or property, without due process of law." U.S. CONST. amend. V. The Fourteenth Amendment applies that law to the states by stating "nor shall any State deprive any person of life, liberty, or property without due process of law." U.S. CONST. amend. XIV § 1.

> Plaintiffs must identify the protected life, liberty, or property interest at issue when alleging violations of either procedural or substantive due process. *Baldwin v. Daniels*, 250 F.3d 943, 946 (5th Cir. 2001); *Brennan v. Stewart*, 834 F.2d 1248, 1257 (5th Cir. 1988). Procedural due process requires notice and an opportunity to

---

[19] The County additionally alleges that because her indictment was reviewed by a Grand Jury, a trial judge reviewed a motion to quash, and she had a trial by jury, the policy of pursuing political arrests and prosecutions without probable cause was not the moving force behind the indictment. For the same reasons stated herein, the Court is not persuaded by this argument. Further, the AG Defendants argue that following the correct procedures completely negate the allegation that there is no probable cause. The analysis in this section regarding independent intermediary equally applies to this argument, demonstrating why it is unpersuasive.

be heard. *Matthias v. Bingley*, 906 F.2d 1047, 1051 (5th Cir. 1990). "The Due Process Clause permits persons whose interests may be adversely affected by government decisions to participate in those decisions." *Id.* at 1052. On the other hand, substantive due process bars certain government actions "when [they] can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *Breen v. Tex. A & M Univ.*, 485 F.3d 325, 332 (5th Cir. 2007).

*Lugo v. Collin Cty.*, No. 4:11-CV-00057, 2011 WL 4378093, at *10 (E.D. Tex. Aug. 2, 2011) (Mazzant, Mag. J.), *report and recommendation adopted by*, 2011 WL 4383452 (E.D. Tex. Sept. 20, 2011) (Schneider, J.).

Thus, the Court first addresses whether Plaintiff has identified a proper protected life, liberty, or property interest; the Court will then turn to the individual inquiries for procedural and substantive due process.

### i.   Protected Interests

In her complaint, Plaintiff alleges liberty interests, property interests, and additional protected rights. (Dkt. #42 ¶¶ 87–89, 139–141).

The types of interests that constitute "liberty" and "property" for Fourteenth Amendment purposes are not unlimited; the interest must rise to more than "an abstract need or desire," and must be based on more than "a unilateral hope[.]" Rather, an individual claiming a protected interest must have a legitimate claim of entitlement to it.

*Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (quotations omitted). The Court will address each category in turn.

### aa.        Liberty

Plaintiff asserts that her liberty interests were unconstitutionally deprived by being placed on probation for ten years and by restricting her travel beyond Collin County and contiguous counties. The Defendants do not appear to contest the validity of the liberty interests asserted by Plaintiff.

"[A] liberty interest is created in one of two ways: Either the Due Process Clause confers a liberty interest, or such an interest is created by the state through a statute." *Richardson v. Joslin*, 501 F.3d 415, 419 (5th Cir. 2007) (citing *Sandin v. Conner*, 515 U.S. 472, 477–78, 479 n.4 (1995)). "The Due Process Clause confers a liberty interest in punishment that is not 'qualitatively different' from the punishment characteristically suffered by a person convicted of a crime.'" *Id.* (quoting *Sandin*, 515 U.S. at 479 n.4). Probation is a punishment characteristically suffered by a person convicted of a crime. Moreover, "[t]he right to travel is part of the liberty of which the citizen cannot be deprived without the due process of law." *United States v. Laub*, 385 U.S. 475, 481 (1967) (quoting *Kent v. Dulles*, 357 U.S. 116, 125 (1958)); *accord Hernandez v. Cremer*, 913 F.2d 230, 237 (5th Cir. 1990).

Thus, the Court finds, Plaintiff has plausibly pleaded a liberty interest.

### ba.      Property

Plaintiff additionally alleges a protected property interest in continued employment and maintaining a professional license. The Defendants do not appear to contest the validity of the property interests asserted by Plaintiff. "The Constitution does not create property interests . . . and [the Court] therefore look[s] to Texas law for the creation of a property interest that will support [Plaintiff's] claim to due process rights." *Porter v. Valdez*, 424 F. App'x 382, 389 (5th Cir. 2011) (per curiam) (quoting *Garcia v. Reeves Cty.*, 32 F.3d 200, 203 (5th Cir. 1994)).

As to her right to continued employment, generally this is not a protected interest. However, Plaintiff's claim is different. The Fifth Circuit has explained "[p]ublic employees enjoy a property right in continued employment, if their at-will status has been modified by state or local law." *Id.* (citing *Schaper v. City of Huntsville*, 813 F.2d 709, 717 (5th Cir. 1987)). Texas law has previously concluded that a judge with a term limit is not an at-will employee. *See Barnett v. City*

*of Plainview*, 848 S.W.2d 334, 339 (Tex. App.—Amarillo 1993, no pet.). Plaintiff was not an at-will employee but, instead, a duly elected district judge with thirteen months remaining in her term. Plaintiff was forced to resign in connection with this alleged malicious investigation and prosecution. Thus, Plaintiff has plausibly pleaded that she enjoyed a property right to continued employment. *See id.*

Further, Plaintiff avers that she also has a property interest in maintaining her professional license. "'Privileges, licenses, certificates, and franchises . . . qualify as property interests for purposes of procedural due process.' This is because, once issued, a license or permit "may become essential in the pursuit of a livelihood." *Bowlby v. City of Aberdeen*, 681 F.3d 215, 220 (5th Cir. 2012) (quoting *Wells Fargo Armored Serv. Corp. v. Ga. Pub. Serv. Comm'n*, 547 F.2d 938, 941 (5th Cir. 1977)) (citing *Bell v. Burson*, 402 U.S. 535, 539 (1971)). According to Plaintiff's complaint, her license to practice in law in the State of Texas was suspended for ten years based on her conviction in the underlying case;[20] as such, she has stated a plausible claim that she had a legitimate property interest in maintaining her professional license.

### ca.    Additional Protected Interests

In her complaint, Plaintiff also alleges that she was deprived of the following rights:

a.      Plaintiff's Second Amendment right to keep and bear arms, according to Texas Penal Code Sec 46.04, Texas Government Code §411.172-a-3, and 18 U.S.C. [§] 922(g).

b.      Plaintiff was disenfranchised and deprived of her right to participate in the political process because individuals in Texas convicted of a felony are ineligible to vote while on probation according to Section 11.002 of the Texas Election Code.

c.      Plaintiff was barred from serving on a jury according to Section 62.102 of the Texas Government Code,

---

[20] Plaintiff says both five years and ten years. The discrepancy is likely because the suspension was lifted after her sentence was vacated.

> d. Plaintiff was deprived of her right to participate in the political process because she was barred from running for public elective office according to Section 141.001 of the Texas Election Code.

(Dkt. #42 ¶¶ 89, 141). The Defendants do not meaningfully challenge these interests as being valid for due process consideration. However, because the Court has already found that Plaintiff has stated a valid liberty interest and a valid property interest, the Court does not decide, at this time, whether these interests are part of the consideration for a due process claim.

### ii. Procedural Due Process

"We examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State, the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr.*, 490 U.S. at 460 (citing *Hewitt v. Helms*, 459 U.S. 460, 472 (1983); *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 571 (1972)). Because Plaintiff plausibly demonstrated the existence of liberty and property rights, the Court must determine whether the rights afforded in this case were constitutionally sufficient.

The CCDAO Defendants and the AG Defendants argue[21] that the procedures afforded to Plaintiff were constitutionally sufficient because Plaintiff "had the ultimate due process right afforded American citizens—a trial by a jury of her peers." (Dkt. #59 at p. 25); *accord* (Dkt. #61 at pp. 23–24). The CCDAO Defendants maintain that "[t]he entirety of the criminal process flowed exactly as the Constitution mandates—credible evidence presented to a neutral intermediary resulting in an indictment then a citizen jury trial rendering a conviction which was reviewed by the Appellate Courts." (Dkt. #59 at pp. 26–27). Plaintiff counters that procedural

---

[21] The AG Defendants additionally argue that there is no allegation of improper purpose on behalf of the AG Defendants, the Court addresses this argument when analyzing the clearly established prong of qualified immunity. *See infra* II.B.3.

due process protects against the mistaken and unjustified deprivation of life, liberty, and property interests. Based on this idea of procedural due process, Plaintiff maintains that because there is no evidence to support her conviction, her due process rights were violated.

"Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property." *Carey v. Piphus*, 435 U.S. 247, 259 (1978). Thus, the rules for procedural due process "are shaped by the risk of error inherent in the truth-finding process." *Id.* That is what makes procedural due process "a flexible concept that varies with the particular situation." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990).

> To determine what procedural protections the Constitution requires in a particular case, we weigh several factors: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail."

*Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). This three-factor test culminates in the idea "that '[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.' In most cases, 'a meaningful time' means prior to the deprivation of the liberty or property right at issue." *Bowlby*, 681 F.3d at 220 (quoting *Zinermon*, 494 U.S. at 126 (1990)); *accord Mathews*, 424 U.S. at 333 (citing *Zinermon*, 494 U.S. at 127; *Caine v. Hardy*, 943 F.2d 1406, 1411–12 (5th Cir. 1991)).

Here, it is important to first note that Plaintiff was afforded pretrial notice and an opportunity to be heard. Plaintiff was afforded the standard process guaranteed to every criminal defendant, a jury of her peers. Plaintiff was also represented by counsel. It is hard to imagine a more meaningful opportunity to be heard. It is the opportunity guaranteed by the Constitution for our system of justice in order to reduce the risk of an erroneous deprivation of people's liberty

interests.  Plaintiff has not offered what additional safeguards she should have been afforded in this situation, and the Court cannot think of any other procedure she should have been guaranteed.  Thus, the Court finds that the procedure in this case was sufficient and that Plaintiff's claim for procedural due process should be dismissed with prejudice.

### iii.  Substantive Due Process

While she may have been afforded the correct procedure, Plaintiff also brings a claim for a substantive due process violation.[22]  "A violation of substantive due process . . . occurs only when the government deprives someone of liberty or property; or, to use the current jargon, only when the government works a deprivation of a constitutionally protected interest."  *Simi Inv. Co. v. Harris Cty.*, 236 F.3d 240, 249 (5th Cir. 2000) (quoting *Brennan v. Stewart*, 834 F.2d 1248, 1257 (5th Cir. 1988)).  The "[s]ubstantive due process analysis is appropriate only in cases in which [the] government arbitrarily abuses its power to deprive individuals of constitutionally protected rights.  Therefore, recognizing that reliance on substantive due process must be taken with the 'utmost care'" *Id.*

The Fifth Circuit has stated that in order to find a constitutional due process violation after a conviction, the Court "must find that the state presented no evidence that could have supported the petitioner's conviction."  *Anderson v. Maggio*, 555 F.2d 447, 452 (5th Cir. 1977) (citations omitted).  The Texas Court of Criminal Appeals has made such a finding in deciding a writ of habeas corpus after a woman pleaded guilty and was sentenced to seven years' incarceration.

---

[22] The AG Defendants additionally argue that Plaintiff did not have permission from the Court to add new claims; therefore, her substantive due process claim is untimely.  Plaintiff responds that she "raised due process generally in her original Complaint, but did not distinguish between procedural due process and substantive due process.  At the request of the Court, Plaintiff has expounded on the due process allegations raised in the original Complaint, and separated the allegations regarding the two species of due process."  (Dkt. #65 at p. 18).  The Court agrees with Plaintiff.  In the Court's Initial Order, the Court states that Plaintiff "could be more specific as to her due process claim—whether she seeks only procedural or also substantive due process."  (Dkt. #39 at p. 14 n.7).  Thus, the claim is timely.

*Ex parte Perales*, 215 S.W.3d 418, 418 (Tex. Crim. App. 2007).[23]  Subsequently, the Amarillo Court of Appeals determined, when considering two factually similar cases, that the facts of the applicant's case, even if true, did not result in a crime based on the language of the statute.  *Id.* at 419 (explaining that a pregnant woman ingesting a controlled substance does not meet the definition of delivery in the Texas Health and Safety Code).  The Texas Court of Criminal Appeals agreed with Amarillo Court of Appeals' conclusions and determined that because what the applicant pleaded guilty to was not a crime under the definition of delivery, the record was "devoid of evidentiary support for a conviction[.]"  *Id.* at 420.

These are essentially the facts before the Court.[24]  In her complaint, Plaintiff alleges that even if all the facts the prosecution alleged in this case were true, that the facts were not a crime under Texas law.  Moreover, Plaintiff maintains that the CCDAO Defendants knew that the charged actions were not illegal.  According to Plaintiff, these charges were recklessly investigated[25] and pursued based on political motivations as opposed to actually trying to convict any wrongdoing.  Under the facts presented in this case, the Court finds no reason why it should not apply the reasoning in *Anderson*—that no evidence to support a conviction could result in a due process violation—to this case.  A case where the CCDAO, and later the OAG, allegedly actively investigated and pursued a criminal charge against Plaintiff upon request of the incumbent, with the knowledge that the criminal charge was in fact not criminal at all.

---

[23] Plaintiff cites this in support of procedural due process claim; however, upon the Court's reading of this line of cases, the Court finds it applies to substantive due process.

[24] Plaintiff has the additional fact that the trial court judge who vacated her conviction found that Plaintiff's due process rights were violated.  (Dkt. #3 at p. 1).  The CCDAO Defendants argue that this is a stray finding that is of no consequence.  However, the Court would not and does not find a violation of due process based on this finding alone, but it does serve as support for the Court's holding.

[25] The CCDAO Defendants argue that because the investigation took a long time that it was not a rush to judgment and thus was not reckless.  The Court is not persuaded.  The CCDAO Defendants have provided no case law to suggest that the only definition of reckless is "rushed", the Court finds that a reckless investigation can also include one where, as here, the investigators pursue an individual for a political motivation without any notion that the individual engaged in any wrongdoing.

The AG Defendants additionally argue that because Plaintiff was afforded ample procedure in the underlying case, there is nothing shocking about the nature of the process. The AG Defendants assert that because Plaintiff was afforded all the proper procedures, that contradicts a finding of no probable cause. According to the AG Defendants, a finding that Defendants had probable cause negates a finding of a substantive due process violation under this set of facts. While the Court agrees that she was afforded the proper procedures, that does not mandate a finding that the procedures were handled appropriately. As the Court discussed when analyzing Plaintiff's Fourth Amendment claim, the procedure was flawed. *See supra* II.B.2.b. Thus, the Court finds that Plaintiff has plausibly pleaded a substantive due process violation.

### iv. Conspiracy

The AG Defendants argue that Plaintiff failed to state a plausible conspiracy claim because she has failed to allege a plausible constitutional deprivation and the allegations regarding any agreement are insufficient and conclusory. The CCDAO Defendants argue further that there are no facts pleaded surrounding the agreement.[26] Plaintiff contends that she has plausibly suggested a claim for conspiracy of deprivation of her constitutional rights and that she need only show circumstantial evidence, due to the secret nature of a conspiracy.

In the Fifth Circuit, to prevail on a § 1983 conspiracy claim, the plaintiff must show that the defendants agreed to commit an unlawful act. *Crowe v. Lucas*, 595 F.2d 985, 993 (5th Cir. 1979). The plaintiff must show "(1) an actual violation of a right protected under § 1983 and (2) actions taken in concert by the defendants with the specific intent to violate the aforementioned right.'" *Delmast v. Cardenas*, No. 4:09-cv-629, 2011 WL 1103915, at *2 (E.D. Tex. Mar. 25,

---

[26] The CCDAO Defendants additionally argue that a conspiracy allegation does not overcome immunity. However, because the Court finds that the CCDAO Defendants are not entitled to qualified immunity for Plaintiff's substantive due process claims and Fourth Amendment claims, this argument is unnecessary to address.

2011) (alteration in original) (quoting *Kerr v. Lyford*, 171 F.3d 330, 340 (5th Cir. 1999)). "A conclusory allegation of conspiracy is insufficient. Specifically, plaintiffs must identify an illegal objective of the agreement." *Rodriguez v. Neeley*, 169 F.3d 220, 222 (5th Cir. 1999) (citing *McAfee v. 5th Circuit Judges*, 884 F.2d 221 (5th Cir. 1989), *cert. denied*, 493 U.S. 1083 (1990)).

Here, the first element is satisfied. The Court previously found that Plaintiff has stated a plausible claim for violation of her Fourth Amendment right to be free from false arrest and a deprivation of her substantive due process rights. As to the second element, Plaintiff has clearly identified the illegal objective of the alleged agreement: to investigate, prosecute, and convict Plaintiff with an absence of probable cause knowing that she had committed no crime at the request of a disgruntled incumbent. Plaintiff, at this stage, does not have specific allegations regarding the discussions or writings giving rise to an agreement. However, Plaintiff has plausibly pleaded circumstantial facts that the CCDAO Defendants acted in concert with White to achieve the goals. Not only did the CCDAO Defendants start and continue the investigation at the request of the incumbent, White joined and took over the inappropriate investigation. *See infra* II.B.3. The Court finds that Plaintiff has plausibly pleaded a conspiracy claim to overcome a motion to dismiss.

## B. The Defendant's Actions Violated Clearly Established Statutory or Constitutional Rights, Which a Reasonable Person Would Have Known

Even though Plaintiff has stated a plausible claim for violation of the Fourth Amendment and her substantive due process rights, the CCDAO Defendants and White could still be entitled to qualified immunity if they acted reasonably in depriving Plaintiff of her rights. Defendants argue that they acted under a reasonable interpretation of the law at the time. Defendants assert that they could not be expected to anticipate the Court of Criminal Appeals' holding, on a novel issue, at the time of the conviction. Moreover, Defendants assert that the procedure of this case necessarily dictates that reasonable minds could differ. Defendants additionally contend that the

allegations in this section are too general. Plaintiff disagrees. According to Plaintiff, her rights were clearly established at the time of her conviction and Defendants had fair notice that their actions violated her constitutional rights.

An official's actions are objectively reasonable if they do not violate clearly established law. *Easter v. Powell*, 467 F.3d 459, 462 (5th Cir. 2006) (citing *Salas v. Carpenter*, 980 F.2d 299, 310 (5th Cir. 1992)). "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012)). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at, 741. "Of course, in an obvious case, [general] standards can 'clearly establish' the answer, even without a body of relevant case law." *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004).

Based on the allegations in this case, the constitutional violations were clearly established. Plainitff alleges that Defendants investigated, indicted, arrests, prosecuted, and obtained a conviction against Plaintiff knowingly without probable cause. The result of these actions resulted in Plaintiff losing her duly elected seat and being placed on probation, with her travel being restricted and her law license being suspense.

The right to be free from arrest without probable cause was clearly established at the time of the events that the alleged misconduct occurred. *Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir. 1994) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)) (holding "[t]he right to be free from arrest without probable cause is a clearly established constitutional right."). Similarly, it was clearly established at the time of the alleged conduct that it violated due process rights to prosecute in the absence of evidence a crime had been committed and that Plaintiff's asserted liberty and property

interests were clearly established at the time. *See Laub*, 385 U.S. at 481 (holding restricted travel is liberty interest); *Anderson*, 555 F.2d at 452 (holding conviction in the absence of evidence is due process violation); *Barnett*, 848 S.W.2d at 339 (holding judge is not at-will); *Richardson*, 501 F.3d at 419 (holding employment, when not at-will, is a valid property interest); *Bowlby*, 681 F.3d at 220 (holding professional license is a valid property interest). Finally, Texas Penal Code Section 36.02 was in place at the time of the underlying allegations.[27]

Regardless, the Court finds that this is a quintessential example of an "obvious case." Any reasonable official should know that creating and pursuing a criminal investigation, for something that is not a crime, based on political motivations, thereby destroying that person's reputation, employment, and livelihood is a violation of that person's constitutional rights. As argued by Plaintiff, the improper "motivation is evident from a myriad of evidence including, manipulation and destruction of evidence, pressuring of witnesses, and the clear misuse and abuse of the grand jury process." (Dkt. #65 at p. 2). Taking as true the allegations in this case, there is not a reasonable official that would have in the same manner or would have thought the actions complied with Plaintiff's constitutional protections. The fact that a grand jury issued an indictment, a judge denied the motion to quash the indictment, a jury convicted, and one panel on the court of appeals affirmed the conviction does not matter based on the allegations in this case that facts were misrepresented and untrue. *See supra* II.B.2.b.

Although it is alleged that the CCDAO Defendants started the politically motivated investigation, Defendant White is alleged to be involved early in the investigation. Based on the allegations it is plausible in this case that White took over the inappropriately motivated

---

[27] Texas Penal Code Section 36.02 states, in relevant part, "[i]t is an exception to the application of [the bribery statute] that the benefit is a political contribution as defined by Title 15, Election Code, or an expenditure made and reported in accordance with Chapter 305, Government Code." Based on this section, the Court of Criminal Appeals in the underlying case, determined that the facts as alleged were not a violation of the bribery statute.

investigation. As mentioned in the Court's Initial Order, White was involved no later than December 2008, which was early in the investigation. Moreover, Plaintiff alleges that the district judge presiding over the Spring 2010 Grand Jury declined to extend the grand jury's six-month term on June 24, 2010. Despite this ruling, Plaintiff claims that on June 28, 2010, Defendant White reached out to Plaintiff's counsel requesting she appear at an added grand jury session, which Plaintiff was not aware had not been approved. At that time, Plaintiff's counsel and Plaintiff offered to meet with Defendant White, and others, on June 29, 2010. The June 29, 2010 meeting was very short, and Defendant White had no questions for Plaintiff at that time. Plaintiff alleges that she perceived the meeting was an attempt to intimidate her. Subsequently, Plaintiff learned of the ruling that the extension had been denied; accordingly, on June 29, 2010, Plaintiff's counsel filed a Motion to Quash the Illegally Re-Assembled Grand Jury. On June 30, 2010, the district court held a hearing on the motion, with Plaintiff's counsel and Defendant White appearing at the hearing. The motion to quash was granted. In granting the motion, the district court held that "[t]he Attorneys representing the State in this matter had absolute[ly] NO authority to re-assemble this Court's Grand Jury after it was discharged on June 24, 2010 without permission of the Court . . . . Therefore, there is no authority for this Court's Grand Jury to re-assemble to conduct any additional business. Any such business will be VOID and have NO AUTHORITY. Any person who violates this order will immediately be held in CONTEMPT." (Dkt. #10 ¶ 47) (emphasis in original). Based on these actions, it is plausible that instead of coming in as an impartial third-party prosecutor, White joined in the inappropriate motive and behavior surrounding the underlying allegations.

Accordingly, at this point, the Court finds the CCDAO Defendants and White are not entitled to qualified immunity, but determines that the case should proceed through discovery before making a final determination on the qualified immunity issue.[28]

### C. Official Immunity as to the CCDAO Defendants

The CCDAO Defendants allege that, to the extent Plaintiff asserts a state law cause of action for abuse of process, they are entitled to official immunity. Plaintiff disagrees. In its initial motion to dismiss, the Court addressed the AG Defendants' argument for official immunity but did not address the CCDAO Defendants' argument regarding official immunity. Much of the analysis remains the same.

"Government employees are entitled to official immunity from suit arising from the performance of their (1) discretionary duties in (2) good faith as long as they are (3) acting within the scope of their authority." *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994) (citing *Baker v. Story*, 621 S.W.2d 639, 644 (Tex. Civ. App.—San Antonio 1981, writ ref'd n.r.e.); *Wyse v. Dep't of Pub. Safety*, 733 S.W.2d 224, 227 (Tex. App.—Waco 1986, writ ref'd n.r.e.). "Official immunity is an affirmative defense. Thus, the burden is on the defendant to establish all elements of the defense." *City of Lancaster*, 883 S.W.2d at 653 (citing *Perry v. Tex. A & I Univ.*, 737 S.W.2d 106, 110 (Tex. App.—Corpus Christi 1987, writ ref'd n.r.e.), *Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex. 1984)).

The Court finds conclusively establishing official immunity at this stage in the litigation to be difficult based on the allegations of this case. At the very least, Plaintiff has alleged that the

---

[28] The CCDAO Defendants additionally argue that Plaintiff has not plausibly stated a claim for the ultra vires exception. Because the Court found that the CCDAO Defendants are not entitled to prosecutorial immunity or qualified immunity as to Plaintiff's substantive due process claim and fourth amendment claim, the Court need not address the ultra vires exception to immunity. Additionally, because the CCDAO Defendants are not entitled to immunity at this stage, the County is not shielded by the CCDAO Defendants immunity.

defendants in this case did not act in good faith. To the contrary, Plaintiff alleges that the defendants acted maliciously in this case, investigating and prosecuting her because she won an election by a landslide and because the CCDAO Defendants disagreed with her rulings in criminal cases. As such, at this stage, the CCDAO Defendants are not entitled to official immunity. *See Carter v. Diamond URS Huntsville*, *LLC*, 175 F. Supp. 3d 711, 742 (S.D. Tex. 2016) (quoting *Wood v. Strickland*, 420 U.S. 308, 322 (1975)) (explaining "good faith immunity is not available if the officer asserting that affirmative defense 'took the action with malicious intention to cause a deprivation of constitutional rights or other injury.'").

### D. Failure to State a Claim

Defendants generally argue that Plaintiff had failed to properly plead a constitutional claim. However, based on the analysis in this order and after a review of the current complaint, the motions to dismiss, the responses, the replies, and the sur-replies, the Court finds that Plaintiff has stated plausible claims for purposes of defeating a Rule 12(b)(6) motion to dismiss.

### CONCLUSION

It is therefore **ORDERED** that Defendants John Roach, Sr. and Christopher Milner's ("CCDAO Defendants") First Amended Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. #59) is hereby **GRANTED in part and DENIED in part**. The motion is granted as to the supervisory liability claim and failure to intervene claims asserted against Milner, Plaintiff's malicious prosecution claim, and Plaintiff's procedural due process claim. The motion is denied as to the remaining claims.

It is further **ORDERED** that Defendant Collin County, Texas' ("the County") First Amended Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. #60) is hereby **DENIED**.

It is further **ORDERED** that Defendants Abbott and White's Motion ("AG Defendants") to Dismiss Putative Second Amended Complaint (Dkt. #61) is hereby **GRANTED in part and DENIED in part**. The motion is granted as to all causes of actions asserted against Abbott. The motion is granted regarding the supervisory liability claim, failure to intervene claim, malicious prosecution claim, and procedural due process claim as to White.

**SIGNED this 23rd day of December, 2019.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE