# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| SUZANNE H. WOOTEN., | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | CIVIL ACTION NO. 4:18-CV-00380 Judge Mazzant |
| COLLIN COUNTY, TEXAS | § § | |
| *Defendant*. | § § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Collin County's Second Amended Motion to Dismiss (Dkt. #115). Having considered the motion and the relevant pleadings, the Court finds that Defendant's motion should be denied.

## BACKGROUND

As alleged by Plaintiff Suzanne H. Wooten, on March 4, 2008, Plaintiff defeated incumbent Judge Charles Sandoval in the Republican primary election for the 380th District Court Judge in Collin County, Texas by a landslide. The next day, Judge Sandoval approached the Collin County District Attorney's Office (the "CCDAO") to complain about Plaintiff, asserting that she cheated during the election and he wanted the CCDAO to find a crime against her. After this meeting, the CCDAO[1] took it upon itself to investigate Plaintiff's campaign without the assistance of law enforcement. Eventually, the Office of the Attorney General[2] (the "OAG"), joined in the case

---

[1] John Roach, Sr. ("Roach") was the elected Collin County District Attorney at this time. Cristopher Milner ("Milner") was an assistant district attorney in Collin County at this time and participated in the case against Plaintiff.

[2] Gregory Abbott ("Abbott") was the Attorney General for the State of Texas at this time. Harry Eugene White ("White") was an assistant attorney general at this time and participated in the case against Plaintiff.

against Plaintiff. The investigation lasted over two years before Plaintiff was initially indicted on October 14, 2010, with the final indictment filed on July 14, 2011.

The theory of the criminal investigation and prosecution against Plaintiff was that a married couple, David Frederick Cary and Stacy Stine Cary ("the Carys"), gave itemized monetary contributions to Plaintiff, through the Carys' consultant who also happened to be Plaintiff's media consultant, James Stephen Spencer ("Spencer"). The Carys and Spencer were Plaintiff's co-defendants in the criminal prosecution. Plaintiff and the Carys were all tried separately and convicted by three different juries. Specifically, Plaintiff's jury found her guilty of six counts of bribery, one count of engaging in organized criminal activity, one count of money laundering, and one count of tampering with a governmental record. After these three trials, Spencer took a plea deal. The Carys appealed their convictions. The Dallas Court of Appeals affirmed Stacy Cary's conviction but several months later a different panel determined David Cary should be acquitted on all counts. Both cases were then appealed to the Texas Court of Criminal Appeals. On December 14, 2016, the Texas Court of Criminal Appeals determined that the Carys should be acquitted on all counts, as the allegations against the Carys were not actually a crime pursuant to the relevant statutes. *Stacy Cary v. State*, 507 S.W.3d 750 (2016); *David Cary v. State*, 507 S.W.3d 761 (2016).

Based on these holdings, on May 10, 2017, Plaintiff filed her First Amended Application for 11.072 Writ of Habeas Corpus Declaring Actual Innocence as a Matter of Law with the 366th Judicial District in Collin County, Texas. On May 24, 2017, the 366th Judicial District in Collin County granted the requested relief "finding the evidence presented legally insufficient because the allegations, even if true, were not crimes under Texas law." (Dkt. #3 at p. 1). The 366th Judicial District in Collin County further determined that because the evidence was legally

insufficient to convict her of the nine felony charges, there had been a "violation of the Applicant's due process rights." (Dkt. #3 at p. 1).

Based on this set of facts, Plaintiff filed suit on May 23, 2018 (Dkt. #1). On May 29, 2018, Plaintiff amended her complaint (Dkt. #10) suing the CCDAO Defendants,[3] the AG Defendants,[4] and the County for violation of her due process rights, violation of the Fourth Amendment, conspiracy to deprive constitutional rights, and malicious prosecution, among other causes of action and theories of liability. On March 27, 2019, the Court issued its Order on Defendants' Initial Motions to Dismiss (Dkt. #39) ("Court's Initial Order"). On April 9, 2019, the CCDAO Defendants and the AG Defendants filed a notice of interlocutory appeal,[5] appealing the Court's ruling denying the motions to dismiss on prosecutorial immunity grounds. On December 23, 2019, the Court issued its order on Defendant's Second Motions to Dismiss (Dkt. #93) ("Court's Second Order"). On January 6, 2020 and January 7, 2020, the CCDAO Defendants and Defendant White filed a notice of interlocutory appeal, appealing the Court's ruling denying in part the motions to dismiss on qualified immunity grounds.

On July 6, 2020, the Fifth Circuit found that Roach, White, and Abbott were entitled to absolute prosecutorial immunity and Milner was not. *See Wooten v. Roach*, 964 F.3d 395, 406–11 (5th Cir. 2020). Following the Fifth Circuit's ruling, this Court dismissed Roach, White, and Abbott (Dkt. #110). On August 31, 2020, Wooten filed a Third Amended Complaint (Dkt. #111). On December 14, 2020, the Court approved Wooten's Notice of Voluntary Dismissal (Dkt. #119) as to Milner, leaving Collin County, Texas as the sole defendant.

---

[3] The CCDAO Defendants consisted of Roach and Milner.
[4] The AG Defendants consisted of Abbott and White.
[5] The County also initially filed a notice of appeal; however, later voluntarily withdrew its notice of appeal (Dkt. #47).

On October 4, 2020, Collin County (the "County") filed the present motion (Dkt. #115). On November 8, 2020, Wooten filed a response (Dkt. #120). On November 21, 2020, the County filed a reply (Dkt. #121).

## LEGAL STANDARD

The Federal Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in the plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then determine whether the complaint states a claim for relief that is plausible on its face. "A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "But where the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (citation omitted). This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

## ANALYSIS

The County asks the Court to dismiss Wooten's claims and, in support, presents five issues it seeks to be decided:

1. Whether [Wooten] has plead[ed] a plausible claim against Collin County where the County was not involved in nor legally responsible for any of the actions complained about by [Wooten] relating to or arising from her criminal matters;

2. Whether [Wooten] has plead[ed] any constitutionally deficient policy, practice, or custom of Collin County that caused the purported violation of any of [Wooten's] federally secured rights;

3. Whether, because former District Attorney Roach and former Assistant District Attorney Milner did not violate [Wooten's] constitutional rights, Collin County is equally immune from [Wooten's] federal claims;

4. Whether [Wooten] has plead[ed] any plausible claims against Collin County which are not barred by the statute of limitations; and

5

> 5. Whether the State law claims against Defendant Milner should be immediately dismissed because the County has filed the instant Motion under [Texas Civil Practice and Remedies Code] Section 101.106"

(Dkt. #115 at p. 3).[6]

Wooten responds, generally, that the County's motion should be denied because her claims are plausible, and she has pleaded sufficient facts in support of her allegations. Wooten also argues that the statute of limitations does not bar her claims against the County. If the Court is inclined to grant the County's motion, Wooten alternatively seeks leave to amend.

As a threshold matter, the Court briefly outlines Wooten's claims against the County. Ultimately, Wooten claims that the investigation into her by the CCDAO was "politically motivated[,]" and that the District Attorney's Office "employed multiple grand juries to investigate [her], seeking to charge her, without probable cause, for conduct that even if the allegations were true, was not a crime" (Dkt. #120 at pp. 1–2). Wooten ultimately contends that the initial investigation of her, and the lengthier investigation that followed by the AG's office, were a result of the County's unconstitutional practices and customs.

### I. Plausibility of Wooten's Claims

The County argues that the "Fifth Circuit['s] Opinion precludes [Wooten's] contention about non-prosecutorial liability of the County by its finding of absolute Prosecutorial Immunity for former District Attorney Roach" (Dkt. #115 at p. 8). Further, the County contends that it "did not and does not initiate or prosecute criminal cases; nor did it do so regarding [Wooten,]" (Dkt. #115 at p. 13), and the "[Eleventh] Amendment Immunity of Collin County District Attorney Roach [if he had been sued in Official Capacity] demonstrates that [the] County is not [a] proper party" (Dkt. #115 at p. 14).

---

[6] Because Wooten filed a voluntary dismissal as to Defendant Milner, the fifth issue is moot.

Wooten responds that "[t]he responsibility for the investigation, arrest, and prosecution of individuals in Collin County is vested with Collin County, through its policymaker, the Collin County District Attorney[,]" and "[r]egardless of whether the individual Defendant might be immune for their misconduct, such has nothing to do with whether the County is liable for the constitutional violations alleged here under [*Monell*]" (Dkt. #120 at p. 14). Wooten also argues that "[t]he Eleventh Amendment has no application in this case" (Dkt. #120 at p. 22).

When alleging a § 1983 claim, plaintiffs must plead and prove that the government entity "*itself* causes the constitutional violation at issue." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978)). To establish that the government entity did, in fact, cause the constitutional violation, the Fifth Circuit requires a showing that an "official policy" caused the plaintiff's harm. *Deville v. Mercantel*, 567 F.3d 156, 170 (5th Cir. 2009). According to the Fifth Circuit, an official policy is:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984). Keeping in mind the aforementioned, the Court will first address what effect, if any, the Fifth Circuit's opinion has on Wooten's claim against the County. The Court will then address the County's argument regarding its lack of participation in initiating and prosecuting criminal cases. The Court will end its analysis of the

7

plausibility of Wooten's claims by addressing the Eleventh Amendment's ramifications on the liability of the County, if any.

### a. Effect of the Fifth Circuit's Opinion

The County asserts that Wooten's "claims . . . against the County focus upon a certain kind of administrative obligation which is directly connected to the conduct at trial[—]presentation of evidence to establish, at the indictment stage probable cause, and at the conviction stage, guilt beyond a reasonable doubt[,]" and Wooten's allegations of purported *Monell* liability against Collin County thrust her squarely into the *Van de Kamp v. Goldstein* scenario, a situation which involves State prosecutorial action and decisions, not County administrative policy propositions" (Dkt. #115 at p. 9) (alteration omitted).

The Fifth Circuit, in its interlocutory order in this case, points to *Van De Kamp*, 555 U.S. 335 (2009), as the "key decision." *Wooten*, 964 F.3d at 410. In *Van de Kamp*, the Supreme Court "[a]ppl[ied] *Imbler*'s functional test" and "concluded that, although the plaintiff was 'attack[ing] the office's administrative procedures,' the defendants were still entitled to prosecutorial immunity because the plaintiff's 'claims focus[ed] upon a certain kind of administrative obligation—a kind that itself is directly connected with the conduct of a trial.'" *Id.* (quoting *Van de Kamp*, 555 U.S. at 344).[7]

Here, the County is alleged to have "a policy of [pursuing] wrongful investigations, arrests, and prosecutions without probable cause and without due process" (Dkt. #111 at p. 39). Wooten claims that "[t]he policymakers in relation to the wrongful investigations, arrests, and prosecutions pursued without probable cause and without due process[] were Collin County District Attorney John Roach, Sr. and Collin County Attorney *Pro Tem* Harry White" (Dkt. #111 at p. 39).

---

[7] *Imbler*'s functionality test is found in *Imbler v. Pachtman*, 424 U.S. 409 (1976).

8

The County claims that "a District Attorney is not a policymaking official in the County where he acts in his prosecutorial capacity, because he is enforcing State law rather than County law" (Dkt. #115 at p. 10). However, "[i]f a district attorney exceeds the scope of his prosecutorial duties, a county may be held liable under certain limited circumstances." *Kreuger v. Reimer*, 66 F.3d 75, 76 (5th Cir. 1995) (per curiam) (citing *Turner v. Upton Cnty.*, 915 F.2d 133, 137–38 (5th Cir. 1990)). "Two configurations can lead to a municipality's liability under section 1983 for the acts of its officials[:]" (1) "a municipality's final policymakers are held effectively to made policy or condoned creation of a custom by ratifying the unconstitutional or illegal actions of subordinate officers or employees[;]" or (2) "the municipality may be held liable for the illegal or unconstitutional actions of its final policymakers themselves as they engage in the setting of goals and the determination of how those goals will be achieved." *Turner*, 915 F.2d at 136 (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986)). In the present case, Wooten has sufficiently pleaded both avenues.

Regarding the first configuration, Wooten asserts "District Attorney Roach directed, participated in, and ratified the actions of Assistant District Attorney Milner, knowing the improper motion behind those actions" (Dkt. #120 at p. 21). Wooten further claims that the widespread practices of "pursu[ing] wrongful arrests and convictions through profoundly flawed investigations and false allegations" were "so well-settled as to constitute *de facto* policy of Collin County" and "were able to exist and thrive because the policymaker(s) with authority over the same exhibited deliberate indifferences to the problem, thereby effectively ratifying it" (Dkt. #111 at p. 31). Specifically, Wooten argues that "a clandestine subsection of the CCDAO (the Special Crimes Division) was permitted to conduct and facilitate investigations and prosecutions by and at the direction of Roach and [] Milner without oversight or involvement of outside police

9

agencies" (Dkt. #111 at p. 31). After considering the allegations by Wooten, the Court finds the first configuration properly and sufficiently pleaded for purposes of defeating a Rule 12(b)(6) motion.

Regarding the second configuration, Wooten claims that "[t]he constitutional violations in this case were the direct result of the policy, custom and practice and general atmosphere within the CCDAO in which political arrests and prosecutions were pursued with zeal and without consequence" (Dkt. #111 at p. 41). Further, Wooten asserts that "the 'Special Crimes Division' appears to be little more than a division used by Roach to harass and intimidate political and personal foes, or to do so on behalf of his political donors and allies" (Dkt. #111 at p. 41). According to Wooten, "[t]he use of the 'Special Crimes Division' in such a fashion shows a pattern, custom, and practice amounting to a policy of the CCDAO of exacting political revenge on behalf of District Attorney Roach and his allies by way of unfounded investigations and prosecutions" (Dkt. #111 at p. 41).

Wooten has identified both Roach and Milner as policymakers who participate and promote the practice of launching unconstitutional investigations, and the Court is persuaded that the implementation of the policy at issue is outside the scope of the district attorney's role as a prosecutor.[8] As such, based on precedent and the amorphous nature of Roach as District Attorney, the Court reaffirms its holding that Roach was acting as a policy maker on behalf of the County for purposes of the motion to dismiss. *See* Dkt. #39; *see also Crane v. State of Texas*, 759 F.2d 412 (5th Cir. 1985). The Court finds *Van de Kamp* relevant only as to the immunity finding by

---

[8] The Court's prior order, Dkt. #39, "the CCDAO in this case was not attempting to uphold the laws of the State, as the allegations against [Wooten] were not a crime under the laws of the State" (Dkt. #39 at p. 19). However, even assuming the allegations *were* crimes under Texas law, that in itself does not shield the County from liability for its alleged unconstitutional practices and customs. The Court will therefore not revisit the propriety of this part of its prior holding.

10

the Fifth Circuit, and the Court further finds that the Fifth Circuit's opinion—which addressed *only* the applicability of prosecutorial immunity—has no bearing on the County's liability to Wooten, if any, under *Monell*. *See Bellamy v. City of New York*, 914 F.3d 727, 760 (2d Cir. 2019) ("But, the legal question of when immunity should attach is an entirely separate inquiry from which state entity is a final policymaker for *Monell*.)

### b. County's Argument Regarding Lack of Participation

The County also argues that Wooten's "*Monell* claim is . . . implausible because the County did not initiate nor prosecute criminal cases—and certainly not against [Wooten]" (Dkt. #115 at p. 13).  The County points to the State Special Prosecutors as the driving force behind both Wooten's indictment and conviction.  According to the County, "[t]here is a complete factual and legal lapse between Milner's initial investigatory questions about campaign finance reports under the Texas Elections Code and the Attorney *Pro Tem*'s independent prosecutorial decision to ultimately indict [Wooten] for other charges a year after Milner's departure" (Dkt. #121 at p. 5).

The issue presently before the Court is whether Wooten has sufficiently pleaded facts showing the existence of: (1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose moving force is the policy, practice, or custom. *See Monell*, 436 U.S. at 691; *see also Bishop v. Arcuri*, 674 F.3d 456, 467 (5th Cir. 2012).

As noted above, Wooten is not specifically seeking to hold the County liable for the actual prosecution of her by either the CCDAO or the AG's office.  Rather, Wooten is contesting the unconstitutional policies and practices that made her the target of investigation and subsequent criminal proceedings, despite CCDAO allegedly having no probable cause to launch that investigation.  Wooten has identified both Roach and Milner as policymakers.  Wooten has also identified an official policy: "Collin County had a policy of pursuing wrongful investigations,

11

arrests, and prosecutions without probable cause and without due process[,]" specifically in the political realm. Finally, Wooten has pleaded that the investigation into her actions, and subsequent criminal proceedings resulting therefrom, violated both due process and the Fourth Amendment. Wooten contends that her victory over the incumbent 380th District Court Judge in Collin County made her the target of the unconstitutional policy and that the policy was the moving force behind the alleged constitutional violations. After reviewing the Third Amended Complaint, the motion to dismiss, the response, the reply, and supplemental authorities, the Court finds that Wooten has stated facts sufficient to establish the plausible existence of all three elements.

### c. Effect of Eleventh Amendment

The County argues that, if District Attorney Roach had been sued in his official capacity, he would be entitled to Eleventh Amendment immunity. Because Roach would be entitled to immunity, the County asserts it is not a proper party. However, Wooten did not bring suit against the CCDAO Defendants in their official capacities. As noted in Dkt. #39, "[b]ecause [Wooten] did not sue the CCDAO Defendants in their official capacity, the Court does not venture out to decide the hypothetical situation of, if they had been sued in their official capacity, if the CCDAO Defendants would be immune pursuant to the [Eleventh] Amendment" (Dkt. #39 at p. 17).[9] The Court sees no persuasive reason to depart from that sentiment, and the Court again refuses to entertain the hypothetical situation crafted by the County.

Assuming that the County is instead asserting that the Eleventh Amendment shields it from liability, that argument is without merit. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced

---

[9] The Court acknowledges that the hypothetical is framed a bit differently in the County's present motion. However, without deciding the threshold issue of the CCDAO Defendants' immunity pursuant to the Eleventh Amendment, the Court has no means by which to determine whether said immunity supports the County's proposition.

or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI.  Notably, however, the Supreme Court has "held that the Eleventh Amendment does not apply to 'counties and similar municipal corporations.'" *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 123–24 (1984) (first quoting *Mt. Healthy City Sch. Dist. v. Doyle*, 429 U.S. 274, 280 (1977); and then citing *Lincoln Cnty. v. Luning*, 133 U.S. 529, 530 (1890)).  The Fifth Circuit has even noted that "[g]iven such unambiguous pronouncements by the Supreme Court, repeated over so long a period of time, it is scarcely surprising that other courts have considered as settled the Eleventh Amendment's lack of applicability to counties." *Crane*, 759 F.2d at 416.  Further, it is "establish[ed] without question that Eleventh Amendment Immunity does not, as a general rule, extend to counties[,]" and "no exception should be made to this rule without convincing evidence distinguishing the county in question from counties generally." *Id*.  In the present action, the County has not provided any evidence that would distinguish it from counties generally, much less persuasive evidence.  As such, the Fifth Circuit's general rule regarding the Eleventh Amendment applies, and the County is not shielded with such immunity.

## II.     Wooten's *Monell* Claim

The County next asserts that Wooten "has not properly plead[ed] nor could she establish *Monell* liability" (Dkt. #115 at p. 15).  Further, the County contends that Wooten's "*Monell* allegations fail to demonstrate" liability on behalf of the County.  (Dkt. #115 at p. 16).

Wooten argues that she "has identified the relevant policy makers (District Attorney Roach and Assistant District Attorney Milner) and identified a policy or custom and practice of improper and reckless investigations, arrests, indictments, and prosecutions motivated by political, personal, and professional retribution" (Dkt. #120 at p. 19).  According to Wooten, she "has alleged that

such policy or custom and practice was the moving force behind the violation of her civil rights and injuries[,]" and "[t]hese allegations are sufficient to defeat [the County's] motion to dismiss" (Dkt. #120 at p. 19).

As analyzed above, a municipality is liable under § 1983 only when an injury is caused by the execution of the government's policy, practice, or custom. *See Monell*, 436 U.S. at 694. To succeed on a *Monell* action, a plaintiff has to "specifically identif[y]" the contested policy. *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001). Additionally, if that "policy [is] based on a pattern," the plaintiff must demonstrate the pattern "'occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of . . . employees.'" *Davidson v. City of Stafford*, 848 F.3d 384, 396 (5th Cir. 2017) (quoting *Peterson v. City of Fort Worth*, 588 F.3d 838, 850 (5th Cir. 2009)).

The Court has addressed the County's argument, and Wooten's response, in more detail above. *See supra* § I(A). The Court therefore need not re-analyze the arguments here. While the County claims that "[a]n isolated incident cannot be the basis for holding a County liable[,]" (Dkt. #115 at p. 15), Wooten has sufficiently pleaded the existence of seven other incidences:

- Collin County Judge Greg Willis was investigated by . . . Milner while he was a candidate for the Collin County District Attorney position that would be vacated by Roach. Judge Greg Willis' case was not indicted by the grand jury convened by Defendant Milner and . . . David Glickler;

- Denton County Sheriff Weldon Lewis was indicted by . . . Milner a day after the Sheriff's election. The indictment against Sheriff Lucas was thrown out by a judge just over one week later;

- Dallas County Sheriff Jim Bowles was indicted by . . . Milner for allegedly funneling more than $100,000 in political contributions into his personal accounts. The indictment was thrown out by a judge. The provision of the Texas Election Code used by . . . Milner does not even specify criminal penalties for the alleged violations;

14

- Dallas County Jail Commissary Vendor Jack Madera was indicted by . . . Milner only to have the indictment dropped;

- J.V.[] is a defense attorney who was indicted by . . . Milner for tampering with a government record. The indictment was later thrown out.

- D.W.[] is a defense attorney who was indicted by . . . Milner for tampering with a government record. The indictment was later thrown out.

- In similar fashion as the present allegations, an investigation and prosecution of Robert Rodriguez was conducted by the CCDAO (without police involvement) for theft and misappropriation of fiduciary property. The investigation was initiated at the urging of Scott Ginsburg, a major campaign contributor to then District Attorney Roach. The investigation was conducted by . . . Milner, in the shadowy 'special crimes' division of the CCDAO. An indictment was obtained based on false, incomplete, and misleading information. Again, no investigation was conducted by the police. Rodriguez was ultimately acquitted when a jury found him not guilty of the criminal charges brought by the CCDAO

(Dkt. #111 at p. 41). The Court acknowledges that seven incidences seems underwhelming; however, the alleged unconstitutional policy would only apply to a limited subset of people: political adversaries to Roach, Milner, or the donors and allies thereof. Further, the County's argument that Wooten's "indictment and conviction were not the result of any Collin County, or even Collin County District Attorney's Office's constitutionally deficient policy, practice or custom" (Dkt. #115 at pp. 16–17), is unavailing. Wooten was investigated by the CCDAO, and Wooten has sufficiently pleaded that the reason for that investigation was her involvement in the political realm of Collin County.

Thus, after reviewing the Third Amended Complaint, the motion to dismiss, the response, and the reply, and supplemental authorities, the Court finds that Wooten has stated a plausible claim that there was an official policy that caused her harm for the purposes of defeating a Rule 12(b)(6) motion to dismiss.

### III. Vicarious Liability and Underlying Constitutional Violations

The County argues that it "cannot be held vicariously liable . . . as a matter of law" (Dkt. #115 at p. 16). The County also asserts that Wooten's "claims against the County fail as a matter of law because there are no underlying Constitutional violations on the part of Former District Attorney Roach or Assistant District Attorney Milner" (Dkt. #115 at p. 19).

Wooten notes both that she "does not seek to hold Collin County vicariously liable[,]" (Dkt. #120 at p. 22), and that the County is not immune from Wooten's federal claims merely because the Fifth Circuit made a decision regarding the applicability of absolute prosecutorial immunity as to the individual Defendants.[10]

The Fifth Circuit confronted three jurisdictional questions at the outset of its opinion in this case. *See Wooten*, 964 F.3d at 402. After making those threshold determinations, the Fifth Circuit "consider[ed] whether Defendants [were] entitled to prosecutorial immunity." *Id.* at 406. Prevalent in the Fifth Circuit's analysis were the differences between investigative and prosecutorial functions. What was not discussed, however, was whether either Roach or Milner violated Wooten's constitutional rights.[11] While the Court agrees with the County that "if no claim is stated against officials—if plaintiff does not show any violation of his constitutional rights—then there exists no liability to pass through to the county[,]" *Brown v. Lyford*, 243 F.3d 185 191 n.18 (5th Cir. 2001), the Court also notes that "[w]hen . . . a plaintiff states a claim but the official is protected by qualified immunity, that defense protects only the individual officer, not the municipality." *Id.* at 191–92 n.18 (citing *Babb v. Dorman*, 33 F.3d 472, 475 n.5 (5th Cir. 1994)). Thus, the finding of immunity as to the individual Defendants is not dispositive as to whether

---

[10] Because Wooten is not pursuing vicarious liability, the Court need not address it.
[11] Regarding Milner, the Fifth Circuit determined that he was primarily performing investigative functions, which did not impute upon him prosecutorial immunity. Conversely, regarding Roach, the Fifth Circuit found that his functions were prosecutorial, thus entitling him to immunity.

Wooten's constitutional rights were violated because, as noted in *Brown*, a claim may nonetheless exist against the County even though individuals are shielded from liability. *See id*. Considering the above, and after review of the relevant authority and pleadings, the Court finds that the County has not shown that the claims against it fail as a matter of law because there are no underlying Constitutional violations on the part of Former District Attorney Roach or Assistant District Attorney Milner.

### IV. Statute of Limitations

Finally, the County contends that Wooten's "claims for *Monell* violations are all barred by limitations" (Dkt. #115 at p. 23). Wooten responds that she "did not have 'a complete and present cause of action' and could not 'file suit and obtain relief' for malicious prosecution under [*Monell*] until she had been exonerated" (Dkt. #120 at p. 26).

The Court has previously addressed whether Wooten's claims are time-barred. In Dkt. #39, the Court found that "[a]ll of [Wooten's] claims are essentially part of a broader claim alleging a malicious prosecution conspiracy and as such these claims accrue[] at the same time as the cause of action for malicious prosecution" (Dkt. #39 at p. 20) (quotations omitted). The Fifth Circuit's decision regarding the applicability of prosecutorial immunity has no bearing on the Court's determination of the relevant date for statute-of-limitations purposes. As such, after considering the relevant pleadings and authority, and in accord with the Court's previous order, the Court reaffirms that Wooten's claims are timely.

### CONCLUSION

It is therefore **ORDERED** that Defendant Collin County's Second Amended Motion to Dismiss (Dkt. #115) is hereby **DENIED**.

**SIGNED this 27th day of April, 2021.**

17

*[signature: Amos Mazzant]*

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE