# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| SUZANNE H. WOOTEN, § | |
| *Plaintiff,* § | |
| § | Civil Action No. 4:18-CV-380 |
| v. § | Judge Mazzant |
| § | |
| COLLIN COUNTY, TEXAS, § | |
| *Defendant.* § | |
| § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Collin County, Texas's Motion to Strike Plaintiff's Expert Joseph Brown (Dkt. #135). Having considered the motion and relevant pleadings, the Court finds the motion should be **DENIED.**

### BACKGROUND

In 2008, Plaintiff Suzanne H. Wooten ("Wooten") defeated incumbent Judge Charles Sandoval in the Republican primary election for the 380th District Court Judge in Collin County, Texas (Dkt. #111 ¶ 16). After receiving allegations that Wooten cheated during the election, the Collin County District Attorney's Office (the "CCDAO") initiated an investigation into Wooten's campaign (Dkt. #111 ¶¶ 17–18). Eventually, at the request of Christopher Milner ("Milner"), CCDAO's Chief of Special Crimes Unit, the Office of the Attorney General (the "OAG") joined in the case against Wooten (Dkt. #111 ¶¶ 31–32).

At trial, a jury found Wooten guilty of six counts of bribery, one count of engaging in organized criminal activity, one count of money laundering, and one count of tampering with a governmental record (Dkt. #111 ¶ 72). However, due to the acquittal of other parties involved in the criminal lawsuit, on May 10, 2017, Wooten filed her First Amended Application for 11.072 Writ of Habeas Corpus Declaring Actual Innocence as a Matter of Law with the 366th District

Court in Collin County, Texas (Dkt. #111 ¶¶ 88–90).  On May 24, 2017, the 366th District Court granted the requested relief "finding the evidence presented legally insufficient because the allegations, even if true, were not crimes under Texas law" (Dkt. #111 ¶ 89).  The district court also determined that because the evidence was legally insufficient to convict Wooten of the nine felony charges, there had been a "violation of [Wooten's] due process rights." (Dkt. #111 ¶ 91).

On May 23, 2018, Wooten filed suit against numerous defendants alleging violation of her due process rights, violation of the Fourth Amendment, conspiracy to deprive Wooten of her constitutional rights, and malicious prosecution, among other causes of action and theories of liability (Dkt. #1).

After a series of orders from this Court and the Fifth Circuit Court of Appeals, the only remaining defendant is Collin County, Texas (the "County").  The sole remaining claim in this action is Wooten's allegation that the CCDAO had a policy, custom, or practice of pursuing investigations, arrests, and prosecutions which lacked probable cause due to political, personal, or professional motivations (Dkt. #124 at pp. 11–13).

In support of her claim, Wooten retained Joseph Brown ("Brown") as an expert.  Brown is a former criminal prosecutor, District Attorney, and United States Attorney for the Eastern District of Texas (Dkt. #138 at p. 2).  Brown prepared and submitted his expert report, which Wooten sent to defense counsel on August 9, 2021 (Dkt. #127).

On October 1, 2021, the County moved to strike Brown's testimony (Dkt. #135).  Wooten responded on October 20, 2021 (Dkt. #138).  The County replied on October 27, 2021 (Dkt. #139). Wooten filed her sur-reply on November 1, 2021 (Dkt. #140).

**LEGAL STANDARD**

Federal Rule of Evidence 702 provides for the admission of expert testimony that assists the trier of fact to understand the evidence or to determine a fact in issue. FED. R. EVID. 702. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court instructed courts to function as gatekeepers, and determine whether expert testimony should be presented to the jury. 509 U.S. 579, 590–93 (1993). Courts act as gatekeepers of expert testimony "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

The party offering the expert's testimony has the burden to prove that: (1) the expert is qualified; (2) the testimony is relevant to an issue in the case; and (3) the testimony is reliable. *Daubert*, 509 U.S. at 590–91. A proffered expert witness is qualified to testify by virtue of his or her "knowledge, skill, experience, training, or education." FED. R. EVID. 702. Moreover, "[r]elevance depends upon 'whether [the expert's] reasoning or methodology properly can be applied to the facts in issue.'" *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007) (quoting *Daubert*, 509 U.S. at 593). The Fifth Circuit has stated that testimony is relevant when it "assist[s] the trier of fact to understand the evidence or to determine a fact in issue." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 245 (5th Cir. 2002) (quoting *Daubert*, 509 U.S. at 591). Finally, expert testimony must not only be relevant, but also reliable to be admissible. *Daubert*, 509 U.S. at 589. "This gate-keeping obligation applies to all types of expert testimony, not just scientific testimony." *Pipitone*, 288 F.3d at 244 (citing *Kumho*, 526 U.S. at 147).

# ANALYSIS

The County contends Brown's testimony should be struck because: (1) Brown seeks to apply an incorrect standard of care; (2) Brown's opinions constitute impermissible legal opinions; and (3) the basis of Brown's opinions lack sufficient probative force and reliability (Dkt. #135). Wooten responds that Brown's opinions are proper and admissible (Dkt. #138). The Court will address each argument in turn.

### A.  Standard of Care

Brown opines that the CCDAO failed to meet a prosecutor's standard of care (Dkt. #135, Exhibit 2). The County argues Brown's opinion does not assist the jury in deciding whether the CCDAO engaged in a policy or custom of prosecuting politically motivated cases (Dkt. #135 at pp. 4–5). Wooten contends Brown merely provides an opinion on whether the conduct of the CCDAO fell below the standard of care for prosecutors and district attorneys by engaging in investigations and prosecutions which lacked probable cause for political and personal purposes (Dkt. #138 at pp. 8–9). Unfortunately, each side provides scant legal argument in support of their respective position on this point. However, the Court can surmise the parties disagree over the relevance of Brown's testimony on a prosecutorial standard of care.

Wooten's § 1983 claim is all that remains in this suit. A municipality may be liable under § 1983 when the execution of the government's policy, practice, or custom causes injury. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). To succeed on a *Monell* action, a plaintiff must "specifically identif[y]" the contested policy. *Piotrowski v. City of Hous.*, 237 F.3d 567, 579 (5th Cir. 2001). Additionally, if that "policy [is] based on a pattern," the plaintiff must demonstrate the pattern "'occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the

expected, accepted practice of . . . employees.'" *Davidson v. City of Stafford*, 848 F.3d 384, 396 (5th Cir. 2017) (quoting *Peterson v. City of Fort Worth*, 588 F.3d 838, 850 (5th Cir. 2009)).

In his report, Brown states the CCDAO engaged in a pattern of investigating and prosecuting cases that lacked probable cause because of political or personal motivations (Dkt. #135, Exhibit 2 at p. 4). Brown's report includes examples that illustrate his opinion (Dkt. #135, Exhibit 2 at pp. 5–8). Moreover, Brown identifies themes of the CCDAO's contested policies and practices: (1) targeting lawyers, judges, clerks, bondsmen, and other judicial personnel; (2) indicting with superfluous counts or over-charging cases; (3) amending indictments during the course of prosecution; (4) threatening unrepresented defendants; (5) engaging in questionable grand jury practices; and (6) conducting investigations without the involvement of outside law enforcement (Dkt. #135, Exhibit 2 at pp. 11–13). Brown describes these themes as troubling, improper, and unusual (Dkt. #135, Exhibit 2 at pp. 11–13). Brown ultimately concludes that the CCDAO failed to meet the prosecutor's duty "to see that justice is done" (Dkt. #135, Exhibit 2 at p. 13).

To the extent that Brown's opinions rely on a comparison to prosecutorial norms or standards, such a comparison is permissible. First, experts may compare a party's conduct to the relevant standard of care—in fact, such testimony is often required. *Pierson v. United States*, 605 Fed. Appx. 293, 294 (5th Cir. 2015) (citing *Quijano v. United States*, 325 F.3d 564, 567 (5th Cir. 2003)). Second, Brown's opinions are based on his twenty years of experience as a state and federal prosecutor (Dkt. #135, Exhibit 2 at p. 1). Brown possesses specialized knowledge and expertise that may assist the jury in determining whether an unconstitutional official policy existed, based on a pattern of improper behavior. Thus, Brown's testimony regarding whether the behavior

at CCDAO fell below particular norms or customs for a prosecutor's office is relevant and admissible. *Pipitone*, 288 F.3d at 245 (quoting *Daubert*, 509 U.S. at 591).

### B. Legal Conclusions

Next, the County contends Brown's opinions constitute impermissible legal conclusions (Dkt. #135 at p. 5). Wooten responds that Brown merely provides the industry standards for the legal field of criminal prosecution (Dkt. #138 at p. 9).

Experts cannot offer testimony regarding what law governs a dispute or what the applicable law means, because that is a function of the courts. *Fisher v. Halliburton*, No. H-05-1731, 2009 WL 5216949, at *2 (S.D. Tex. Dec. 21, 2009) (citing *Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997)); *see also Goodman v. Harris Cnty*, 571 F.3d 388, 399 (5th Cir. 2009) ("An expert may never render conclusions of law."). "Allowing an expert to give his opinion on the legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant." *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983). "There is one, but only one, legal answer for every cognizable dispute. There being only one applicable legal rule for each dispute or issue, it requires only one spokesman of the law, who of course is the judge." *Askanase*, 130 F.3d at 673.

The Court notes that Federal Rule of Evidence 704 provides that "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." FED. R. EVID. 704. However, Rule 704 does not open the door to all opinions. *Owen*, 698 F.2d at 240. The rule is not intended to allow expert witnesses to give legal conclusions or tell the jury what result to reach. *Id.* Nonetheless, a legal expert may testify as to mixed questions of law and fact. *Corinth Inv'r Holdings, LLC v. Evanston Ins. Co.*,

2014 WL 7146040, No. 4:13-CV-682, at *4 (E.D. Tex. Dec. 15, 2014) (citing *Waco Int'l, Inc. v. KHK Scaffolding Hous. Inc*., 278 F.3d 523, 532–33 (5th Cir. 2002)).

Brown's ultimate opinion is that the CCDAO "had a pattern and practice of using its authority to investigate, threaten to prosecute, or to prosecute cases that lacked probable cause of guilt against individuals with which members of the DA's office had personal, professional, or political differences" (Dkt. #135, Exhibit 2 at p. 4). In support of his opinion, Brown offers other investigations, arrests, and prosecutions as illustrations of the CCDAO's alleged pattern of practice (Dkt. #135, Exhibit 2 at pp. 5–10). For example, in the CCDAO's investigation of Judge Greg Willis, Brown concludes—based on the attorney pro tem's testimony, a grand juror's testimony, and the grand jury's report—there was no probable cause for the investigation, and thus it was improper (Dkt. #135, Exhibit 2 at p. 5).

While probable cause is a legal conclusion, *United States v. Zavala*, 541 F.3d 562, 574 (5th Cir. 2008), the Court finds Brown's opinions admissible. The Court believes *United States v. Fogg*, 562 F.2d 551 (5th Cir. 1981) is instructive here. In *Fogg*, the Fifth Circuit evaluated whether the following statement made by an expert in a tax evasion case was a legal conclusion: "Without any other evidence those monies (from FOJC) would be considered constructive dividend (sic) to the taxpayer." *Fogg*, 562 F.3d at 556. The Fifth Circuit concluded the statement was merely the expert's "opinion as an accountant," and that the expert "did not attempt to assume the role of the court." *Id*. at 556–57. Thus, the *Fogg* court held the expert's opinion did not constitute a legal conclusion. *Id.* at 557.

Additionally, in *United States v. Milton*, the Fifth Circuit affirmed the lower court's admission of an expert's testimony in a prosecution for an illegal gambling business. 555 F.2d 1198, 1204 (5th Cir. 1977). There, the expert characterized certain bets and interpreted "an

7

otherwise obscure transcript" to give the jury insight into the "role of the commissioned bookmaker." *Id.* The *Milton* court concluded the expert witness's statement was not "promoting a legal doctrine" and thus took no issue with its admissibility. *Id.* Finally, the Fifth Circuit found it permissible for a customs agent to state his interpretation of customs laws and apply it to the ultimate issue in the case. *Huff v. United States*, 273 F.2d 56 (5th Cir. 1959).

The ultimate issue here is whether the CCDAO's contested policy, practice, or custom caused Wooten injury. *Monell*, 436 U.S. at 694. Because Wooten claims the contested policy is based on a pattern of activity, Wooten must demonstrate that the duration or frequency of the pattern resulted in the objectionable conduct becoming the expected or accepted practice for employees at CCDAO. *City of Stafford*, 848 F.3d at 396 (citations omitted).

Brown opines the CCDAO "had a pattern and practice of using its authority to investigate, threaten to prosecute, or to prosecute cases that lacked probable cause" against individuals with which CCDAO employees "had personal, professional, or political differences" (Dkt. #135, Exhibit 2 at p. 4). The Court finds this statement similar to the one at issue in *Fogg*. The Court does not believe Brown attempts to assume the role of the Court and make determinations regarding probable cause. Instead, the Court reads Brown's statement as his opinion, as a former prosecutor, that the CCDAO had a practice of pursuing frivolous cases for personal reasons. Therefore, Brown's opinion is not a legal conclusion. Rather, Brown's testimony is evidence of the existence of an alleged pattern of activity, its frequency and duration, and how it may have become CCDAO policy.

### C. Basis of Opinions

Finally, the County argues Brown's testimony should be stricken because he relied on "courthouse gossip," media reports, and information given by interested witnesses to support his

opinions (Dkt. #135 a p. 6).  Wooten responds that Brown's opinions are properly supported and the County's arguments go to the weight, and not to the admissibility, of Brown's testimony (Dkt. #138).

Regardless of its characterization of the underlying factual basis for Brown's opinions, the County's argument is an attack on the credibility of, and weight to afford to, Brown's report. *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1299 (Fed. Cir. 2015) ("To the extent [the expert's] credibility, data, or factual assumptions have flaws, these flaws go to the weight of the evidence, not to its admissibility."); *Matador Drilling Co. v. Post*, 662 F.2d 1190, 1199 (5th Cir. 1981) (finding appellant's "general complaint that the reports are incomplete and inaccurate are matters going to the weight of this evidence and not its admissibility.").

"As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *United States v. 14.38 Acres of Land, More or Less Situated in Leflore Cnty*, 80 F.3d 1074, 1077 (5th Cir. 1996) (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)).  Thus, the County's argument is best saved for the factfinder.  *Moss v. Ole South Real Estate, Inc.*, 993 F.2d 1300, 1307 (5th Cir. 1991) ("The court must allow the jury to make credibility decisions and to decide what weight to afford a report's findings."); *Crompton Richmond Co., Factors v. Briggs*, 560 F.2d 1195, 1202 n.12 (5th Cir. 1977) ("Although [appellant] does not contest the admissibility of this evidence, his attack is essentially one arguing its inaccuracy and incompleteness. . . . This is an assault on its weight, not on its admissibility.  Of course, the weight accorded to such records is within the domain of the trier of fact.").  As such, cross examination is the proper way to expose any alleged deficiencies.  Indeed, cross examination is preferred because "[i]t is the role of the adversarial system, not the court, to highlight weak

evidence." *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004); *see also Mobility Workx, LLC v. Cellco P'ship*, 4:17-CV-00872, 2019 WL 5721814, at *6 (E.D. Tex. Nov. 5, 2019) (Mazzant, J.). Therefore, the Court declines to strike Brown's report or testimony.

## CONCLUSION

It is therefore **ORDERED** Defendant Collin County, Texas's Motion to Strike Plaintiff's Expert Joseph Brown (Dkt. #135) be **DENIED**.

**SIGNED this 9th day of December, 2021.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE